## PEOPLE v. DE FORNARO.

(Supreme Court, Special Term, New York County.    November 28, 1909.)

1. LIBEL AND SLANDER (§ 142*)—CRIMINAL PROSECUTION—LIBEL AGAINST NON-RESIDENT.

Penal Law (Consol. Laws, c. 40) § 1346, provides that an indictment for a libel contained in a newspaper published in the state against a resident thereof may be found in the county where the paper was published or in the county where the person libeled resided when the offense was committed, and section 1347 provides that in libel against a nonresident the indictment shall be found and the trial had at the place where the paper containing the libel purports on its face to be published, or, if no county is indicated thereon, in any county where the paper is circulated.    Code Cr. Proc. § 138, contained substantially similar provisions relating to the place of indictment and trial where the person libeled is a resident and nonresident.    Penal Law, § 1340, defines libel as a malicious publication by writing, printing, etc., which exposes any living person to contempt, etc.    Held, that the purpose of sections 1346 and 1347 was to designate the place of indictment and trial, and not to define libel; and hence do not limit the operation of section 1340 by excluding books or writings other than newspapers, and, under the latter section, as well as at common law, one could be prosecuted for a libel published in a book in this state, though committed against a nonresident.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 402; Dec. Dig. § 142.*

For other definitions, see Words and Phrases, vol. 5, pp. 4116–4125.]

2. STATUTES (§ 181*)—CONSTRUCTION—CONSIDERATIONS—CONSEQUENCES.

The courts must enforce the law as plainly enacted by the Legislature, regardless of the consequences.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 263; Dec. Dig. § 181.*]

3. LIBEL AND SLANDER (§ 156*)—CRIMINAL PROSECUTION—SUFFICIENCY OF EVIDENCE—PUBLICATION—EXPOSING LIBEL.

In a prosecution for libel, evidence held to sustain a finding that accused knowingly parted with a libelous book under circumstances which exposed it to be seen.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 439; Dec. Dig. § 156.*]

Carlo de Fornaro was convicted of libel, and moves for a certificate of reasonable doubt.    Application denied.

Robert C. Taylor, Asst. Dist. Atty., for plaintiff.

George Edwin Joseph (Joseph T. Keiley, on the brief), for defendant.

SEABURY, J.    The defendant has been convicted of the crime of libel.    The present application is for a certificate of reasonable doubt. The indictment alleges that on April 2, 1909, the defendant unlawfully and maliciously published by delivering and causing and procuring to

be delivered to Brentano 24 separate copies of a libel of and concerning Rafael Reyes Espindola, in the form of a printed book entitled "Diaz, Czar of Mexico, an Arraignment by Carlo de Fornaro, with an Open Letter to Theodore Roosevelt." It was established upon the trial without dispute that Rafael Reyes Espindola, concerning whom the libel is alleged to have been published, was a resident and congressman in the Republic of Mexico. That the book alleged to have been published contained a libel against Espindola does not admit of doubt. Nor did the evidence which was offered to establish justification do more than create an issue of fact, which the jury have determined adversely to the defendant. The case was submitted to the jury by the learned trial judge in a charge commendable for its clearness and correctness, and to which no exception was taken by the defendant.

It is contended by the defendant that the court was without jurisdiction of the subject-matter of the action, because the alleged libelous matter is contained in the form of a printed book; and on the further ground that the person concerning whom the alleged libel was published was a nonresident of the state of New York at the time of the alleged publication and at present, and that no jurisdiction vested in the Court of General Sessions with respect to a libel against a nonresident except a libel specified in section 1347 of the Penal Law (Consol. Laws, c. 40).

These two grounds present but a single objection, and are based upon the erroneous contention that the crime of libel upon a nonresident is defined in section 1347 of the Penal Law, and relates exclusively to the publication of "a paper," and does not include the publication of a book or any writing other than "a paper." The Legislature has not attempted to define any crime in either section 1346 or 1347 of the Penal Law. Sections 1340 and 1341 of the Penal Law define the crime of libel. Section 1346 merely provides that, when the crime is committed in a newspaper against a resident, the indictment may be found either in the county where the paper was published or in the county where the person libeled resided when the offense was committed. Section 1347 merely provides that, when the libel is against a nonresident, the indictment shall be found and the trial had "where the paper containing the libel purports upon its face to be published, or, if no county is indicated upon the face of the paper, in any county where the paper was circulated." The obvious purpose of sections 1346 and 1347 of the Penal Law was to provide definitely as to the place where the indictment was to be found and the trial to be had in cases where the libel was contained in a newspaper which might circulate throughout several jurisdictions. The contention that these sections limit sections 1340 and 1341 of the Penal Law or that they define a separate and distinct crime from that defined in sections 1340 and 1341 is without any reasonable basis for support. That sections 1346 and 1347 of the Penal Law were intended to relate solely to the designation of the place where the indictments should be found and the trial had is further indicated by section 138 of the Code of Criminal Procedure.

It is suggested that, since the primary purpose of the criminal law of libel was to prevent a breach of the peace, this crime could not be perpetrated against a nonresident. This argument is not convincing.

The language of section 1340 of the Penal Law is broad in its scope, and leaves no room for the contention that it does not apply to a libel against a nonresident. It specifically declares that written defamatory matter against "any living person" is a libel. Nor did section 1340 of the Penal Law work any innovation in this respect upon the rule of the common law. That one might be convicted of a criminal libel against a nonresident was declared by Lord Ellenborough in the case of Peltier, who was tried in the court of the King's Bench for a libel against Napoleon Bonaparte (R. v. Peltier, 28 Howell's State Trials, 617). The rule declared by Lord Ellenborough was predicated upon still earlier precedents (R. v. Lord George Gordon, 22 Howell's State Trials, 177; R. v. Vint et al., 27 Id. 627). Whether we construe section 1340 of the penal law with regard solely to the language used or with regard to the rule of law existing prior to its adoption, it must be held to include a libel against a nonresident. It is suggested that dangerous consequences follow from a law which punishes as a crime a libel upon a nonresident. The suggestion is irrelevant. In the first place, it is the duty of the court to enforce the law of the state as the people and the Legislature have enacted it, regardless of any consequences which may be supposed to follow. In the second place, it should be borne in mind that the law punishes as a libel only the abuse of the right of the freedom of the press, and in no respect places any restriction upon the free exercise of this right. Article 1, § 8, Const. N. Y. Our law not only safeguards the freedom of the press by constitutional guarantees, but in every prosecution for libel it makes the jury, and not the judge, the arbiter, not only of the facts, but of the law also. Thus, in the present case, the question as to whether the defendant exercised merely his right to publish his sentiments or whether he was guilty of an abuse of that right was determined by the jury. Unless it can be shown that the defendant was denied a fair trial or that the court committed errors of law, no reason exists for staying the execution of the judgment, which is based upon the determination of the jury.

It is further contended by the defendant that there is no evidence in this case to show that the alleged libel was read by any person who understood the same in the state of New York. The difficulty with this argument from the standpoint of the defendant is that, in order to constitute the crime of libel, it is not necessary that it should have been read by any person if the defendant knowingly displayed it or parted with it under circumstances which exposed it to be seen. Section 1343 of the Penal Law provides as follows:

"To sustain a charge of publishing a libel it is not necessary that the matter complained of should have been seen by another. It is enough that the defendant knowingly displayed it or parted with its immediate custody under circumstances which exposed it to be seen or understood by another person than himself."

The evidence shows that the defendant contracted with Brentano for the delivery to it of copies of the English book. Two days after the order was given the books were delivered at Brentano's store, purporting to come from the International Publishing Company, No. 9 West Forty-Fifth street, New York City. It is shown by the evi-

dence that the defendant was the sole agent for the International Publishing Company in New York, and that its only office in New York was in the sleeping room of the defendant at No. 9 West Forty-Fifth street. When the defendant was arrested, he presented the detective who arrested him with an English copy of the book, and told him that Brentano was selling the books for him. The defendant admitted in his testimony that he intended to sell the books in English and in several other languages, and by his own testimony showed that he had written and circulated the book, although he denied that he had caused English copies of the book to be delivered to Brentano.

The evidence was ample to justify the submission of the case to the jury, and I can see no good reason why the verdict should be reversed on appeal. I have examined the other alleged errors assigned by the defendant, and, after a review of the whole case, I am unable to certify that there is any reason to believe that the judgment of conviction will be reversed on appeal.

The application for a certificate of reasonable doubt is therefore denied.