In the Matter of CARRIE R. CARNS et al., Petitioners.

HENRY W. RALPH, as Register of the City of New York, Respondent.

Supreme Court, Special Term, New York County, June 30, 1943.

*Sanford J. Weiss* and *Mark G. Holstein* for petitioners.

*V. Paul McManus* for City Bank Farmers Trust Company, mortgagee.

*Henry W. Ralph,* as Register of the City of New York, respondent in person.

*Lewis Orgel,* as Chief Deputy Register of the City of New York, in person.

*William Ascher,* as Official Examiner of Title, in person.

EDER, J. Application under section 404-a of article 12 of the Real Property Law (Torrens Title Act) by the owners in fee thereof for the withdrawal from registration of the title to the lands and premises known as No. 136 West 88th Street, Borough of Manhattan, City, County and State of New York. The premises are subject to a first mortgage now held by City Bank Farmers Trust Company, which consents to the granting of the application; it is opposed by the Register of the City of New York, hereafter sometimes referred to as respondent or " the opposition."

The premises were originally registered under the statute (Real Property Law, art. 12) in the name of William L. Carns, under certificate of title No. 28, issued on March 11, 1920; he died on September 27, 1941; under the terms of his last will and testament the petitioners herein became the joint owners in fee simple of the premises; the certificate of title last issued is No. 110, which was issued by the Register of the City of New York for the County of New York on April 8, 1943, to petitioners. The premises have been unoccupied since shortly after the death of said Carns.

It is alleged that by reason of the defaults in the payment of taxes and water rates and in the payment of interest on said mortgage due from June 25, 1941, the said mortgagee has the right to bring an action for the foreclosure of the said mortgage; that it is willing to accept from petitioners a deed to said premises in lieu of foreclosure, and in order to avoid the possibility of a deficiency judgment against the estate of said Carns petitioners are desirous of conveying the premises to the mortgagee, but it will not accept a deed in lieu of foreclosure

unless and until said premises are withdrawn from registration " because such registration would make it difficult, if not impossible, for said mortgagee to sell said premises after acquiring the same."

It is further alleged that petitioners have not received any offers for said premises equal to or in excess of the amount now due on said mortgage and unless said premises can be conveyed to the mortgagee it will undoubtedly institute foreclosure proceedings, which, in view of the character of the building and the amount of taxes and interest now due, will probably result in a deficiency judgment being rendered against the estate of said Carns. For these reasons the petitioners seek the relief requested.

The City Register opposes the application upon the ground that the petitioners have not brought themselves within the operation of the statute; that the grounds urged for the granting of the application are insufficient in that it is made a prerequisite by the statute invoked that the applicant must establish to the satisfaction of the court that " it is no longer expedient and practical to continue such registration owing to peculiar and unusual circumstances or exigencies involving the title itself " (§ 404-a), and that it is not alleged or contended by the petitioners that there is any question or any circumstances involving the title itself which might call that title in question; hence the application should be denied.

The statute under consideration appears to be without prior construction.

Whatever may be the virtues or vices of the Torrens system of land title registration since it became a law in Australia in 1858 — and its supporters and assailants are many — and whatever may be the logic supporting the conflicting schools of thought on the subject, it has been adopted in one form or another in some of the States of the United States, among them New York, and also in other countries. In so adopting the Torrens system of the registration of the title to land, the basic features underlying the system were sought to be retained, though perhaps with some variation here and there; and, therefore, in endeavoring to arrive at a correct disposition herein, in the construction and interpretation of section 404-a, it is well to keep in view not alone the feature of registration but the right or privilege of withdrawal thereof, if any, under that system, and likewise such legislation in that connection as came into being in the administration of its provisions.

It is argued by the opposition, and, I think, correctly so, that the policy of this State with respect to title registered under the Real Property Law is expressed in section 404 thereof, entitled " Registered property to remain registered ", and which reads as follows: " The bringing of property under this article shall imply an agreement, running with the land and binding upon the applicant and all his successors in interest or title, that the property shall be subject to the terms of this article, and all amendments and alterations thereof, and all dealings with the property so registered, or any estate, right or interest therein, after the same has been brought under this article, and all liens, incumbrances and charges upon the same after the first registration thereof shall be subject to the terms of this article."

It is clear from this language that withdrawal or removal of title from registration is not a matter optional with the owner of the registered title and that, in the absence of some statutory provision to do so, removal or withdrawal from registration is unauthorized. In other words, once brought under the system the land may not be removed or withdrawn from registration as of course, for registration is to be construed as " an agreement, running with the land ", and land once registered shall remain forever so.

Under the Torrens system of land title registration there was no power to remove titles from the register and the want of this power was a cause for bitter criticism, so much so that it was thought it would result in deterring owners from seeking registration under that system and bring it into ultimate disuse, and the want of this power of removal in the English Act of 1875 (38 & 39 Vict., ch. 87) led to very sharp expressions of disapproval. (Brickdale on Registration of Title to Land [London, 1886], pp. 55, 56.) The English (Lord Westbury's) Act of 1862 (25 & 26 Vict., ch. 53, § 34) gave the owner of land the right to remove his title from registration, and the English Land Transfer Act of 1897 (60 & 61 Vict., ch. 65, § 17) provided that the registered proprietor of land not situated in a district where the registration of title was compulsory might, with the consent of the other persons interested therein, if any, remove the land from the register.

Georgia (Ga. Code [1933] tit. 60, § 422), Oregon (Oregon Compiled Laws Annotated, § 70–3, 108), Ohio (Ohio General Code [Page's Anno.] § 8572–64a), and Washington (*Krutz* v. *Dodge*, 66 Wash. 178 [1911]) have enacted legislation permitting the withdrawal of registered titles, and so, too, in Ontario, Canada. (Ontario Rev. Stat. [1927], ch. 158, § 136.)

Section 404 was enacted in 1908 (L. 1908, ch. 444, § 36). New York had no such withdrawal provision prior to 1910, but in that year three changes of substance which had consequences of importance were made: the first related to the examiner's certificate of title; the second dealt with restrictive covenants; and the third, the one which is pertinent here, was the modification of section 404 so as to accord liberty of withdrawal from registration of any land previously registered. (§ 404, amd. L. 1910, ch. 627, § 14.)

In 1916, the provision allowing to owners of registered lands the withdrawal of land from registration was repealed. (§ 404, amd. L. 1916, ch. 547, § 9.) Following such repeal in 1916 owners of registered lands met with refusals of loans upon their properties, and they also encountered difficulties in the sale and mortgaging of lands which were attended with registered title under the Torrens Act. This was traceable to the refusal of title insurance companies to insure the title to such lands and to the refusal of banking institutions and insurance companies to make any mortgage loans unless the land was free of such registered title, and the loaning institution in each case required and insisted upon a policy of title insurance from a title insurance company; this condition was notorious and a matter of common knowledge.

In this situation the owners of registered lands were left in a predicament; they owned property, the marketability and salability of which was greatly impaired since prospective purchasers would not buy unless a title company would insure the title so that the property would be available for mortgage loans by the loaning institutions, and such owners of registered lands were left holding property upon which no mortgage loan could be obtained; thus they derived no practical or commercial benefit from the registration of title under the State Torrens Title Act, but instead suffered a distinct detriment. It was a serious situation yet nothing could be done about it under the Act as registration constituted an agreement running with the land and the land once registered remained forever on the registry, and as the statute stood there was no way that the registered owner could withdraw such registration.

It became apparent, and increasingly so, that some method of relief must be accorded to the owners of such registered lands to save their investment by enabling them to meet the demands of the title insurance companies and the loaning institutions. This situation was met by the passage of private laws from time to time permitting a specific parcel to be withdrawn from such

registration; and it appears that during the fourteen-year period between 1916 and 1930 a private act of the Legislature was sought and obtained in twenty-two instances, and that " To eliminate the hardship and expense incident to the securing of the enactment of such a private law, the withdrawal clause was restored to the statute ", which is the present section 404-a (Powell on Registration of Title to Land in State of New York [1938] pp. 23, 24) ; it is entitled " Withdrawal from registration in certain instances," and so far as here material, provides: " Notwithstanding the provisions of section four hundred and four of this chapter, a title to real property which has been duly registered as provided by article twelve thereof may be withdrawn from such registration when it is established to the satisfaction of the supreme court that it is no longer expedient and practical to continue such registration owing to peculiar and unusual circumstances or exigencies involving the title itself."

It further provides that the applicant shall set forth " a statement of the circumstances existing which render continued registration of the title impracticable and inexpedient, and a prayer for the withdrawal from registration."

It further provides that a copy of the application shall be delivered to an official examiner of title who shall proceed to examine the title and investigate the facts set forth in the application and thereafter make a report in writing to the court of his findings and a recommendation as to the proper disposition of the application. Thereupon a hearing on the application is required to be held in the " title part " of this court, notice being required to be given to and served upon all persons or parties who appear by the report of the official examiner of title " to have any interest in or incumbrance, charge, trust, or lien upon the said real property." Further: " At the hearing any of the *parties in interest* may appear and consent or object to the granting of the prayer of the application " (emphasis mine).

It is pursuant to the provisions of this section that the respondent City Register has appeared at the hearing and objects to the granting of the application for the reasons heretofore stated. In so appearing and opposing he proceeds upon the premise that he is charged with the duty to administer the title registration statute in strict compliance with the law, and that as the public officer charged with the administration of the system of title registration he is required to guard against permitting withdrawals indiscriminately for arbitrary and insufficient reasons and merely at the " caprice " or " whim " of owners

of registered titles or of third parties, and thus protect the system of registration of titles from the danger or eventuality of disintegration.

While the point has not been raised in the petition, yet it suggests itself to the court as one of substance that the City Register has no standing, upon such an application as this, to oppose, for the statute provides that only those persons who are parties in interest, as therein described, may appear and consent or object; the City Register is not such a person, nor is he a party having any interest of any nature whatever " upon the said real property." His functions end with the filing by an official examiner of title of a written report to the court of his findings and a recommendation as to the proper disposition of the application. He has no standing to appear, to consent, or to object. Any appearance by him which is entertained by the court, anything submitted by him which is accepted by the court, is in nature *amicus curiae,* as a friend of the court.

But assuming his right to appear as a " party in interest " and to be heard to " object ", I am of the opinion that the petitioners are entitled to the relief sought.

The enactment of section 404-a was designed to afford relief from a distressing situation, and while it is characterized by the respondent " as an afterthought ", it does not change its nature or effect as remedial legislation, and I do not see that the public policy expressed in the title-registration provisions of the Real Property Law prevents a construction of this section as will tend to carry into effect the aim sought to be attained by the enactment of section 404-a, for " Notwithstanding the provisions of section four hundred and four, * * * a title to real property which has been duly registered * * * may be withdrawn from such registration ", the necessary facts and circumstances appearing to the satisfaction of the court that it should be withdrawn.

The opposition seems to sense, if it does not openly concede, that the public policy as expressed in section 404 has been importantly modified by the enactment of section 404-a, and so it is argued that, even so, it can only be invoked, and that withdrawal of a title from registration is permissible in the single exception where the title itself is involved, and that in the case at bar such is not the fact nor the ground of the application and it therefore must fail.

At first blush the contention would seem to carry decisive weight, but when the history of the Torrens Act is considered, and the criticism of the lack of power of withdrawal from regis-

tration is taken into account, and the subsequent enactments permitting withdrawal of registered titles, plus the conditions which led to the passage of the law, coupled with applicable rules of statutory construction, the ultimate and logical conclusion is that the application comes within the ambit of the legislative intent and within the statute.

I have heretofore pointed out the situation and condition which existed in the absence of a withdrawal provision and the method employed to overcome the condition through the medium of special legislation, and that it was resorted to quite a number of times through the passage of private acts, and the hardship and expense incident thereto, and the difficulties encountered and experienced by registered owners in the selling and mortgaging of such land; and although the opposition has labelled the enactment of section 404-a " an afterthought ", from which I infer that it is intended to intimate that its enactment was not due to or the result of serious preliminary study or to the intent to really alleviate the situation and conditions to which I have alluded, and apparently by such characterization it is meant to convey the idea that the enactment of section 404-a represents " slip " legislation, no factual data of any sort has been submitted in support of the intimation that the passage of section 404-a is not the result of considered judgment based on the mentioned situation and conditions.

We are here dealing with a law which intended to afford relief by permitting the court, in its judgment, to authorize the withdrawal of registered title to land where to continue such registration would no longer be expedient and practical owing to peculiar and unusual circumstances or exigencies. This would seem to be simple enough but for the phrase " involving the title itself ", and it poses the question — Did the Legislature, in the enactment of this remedial law, considering the existing conditions which it sought to cure, intend that literal construction should be given to these words if by doing so the legislative design and intent would be rendered ineffective? I do not think so.

In the interpretation of statutes the legislative intent is the primary consideration (*Gilmore* v. *City of Utica,* 121 N. Y. 561, 568; *Hayden* v. *Pierce,* 144 N. Y. 512), and it has been said this intent is " the grand central light in which all statutes must be read " (*Hudson Iron Co.* v. *Alger,* 54 N. Y. 173, 175); and it is set forth as a rule of statutory construction that a phrase used in a statute must be read in the light of the origin and history of the statute (*Dougan* v. *Van Riper,* 109 Ore. 254),

for a phrase standing and considered alone may import a meaning entirely at variance with the true legislative intent and the object of the enactment. Remedial statutes are to be liberally construed (*Seibert* v. *Dunn*, 216 N. Y. 237, 245; *Chrystal* v. *Mayor of New York*, 63 App. Div. 93; *Wear* v. *Koehler*, 168 App. Div. 115), having in mind the condition sought to be remedied (*Wiley* v. *Solvay Process Co.*, 215 N. Y. 584, 588), and the courts will, to get at the legislative intent, consider the surrounding circumstances (*Flynn* v. *Prudential Ins. Co.*, 207 N. Y. 315, 319; *Tompkins* v. *Hunter*, 149 N. Y. 117, 121) to carry out the general purpose and spirit of the law (*Crannan* v. *Westchester Racing Assn.*, 153 N. Y. 449, 461; *People ex rel. New York Edison Co.* v. *Willcox*, 207 N. Y. 86; *Matter of Meyer*, 209 N. Y. 386, 389; *Wiley* v. *Solvay Process Co., supra*), and to this end the courts will indulge in a departure from literal construction and will sustain the intention although it be contrary to the literal letter of the statute, for a thing within the letter of the statute is not within the statute if it is not within the intention of the law-makers. (*People ex rel. Frost* v. *Wilson*, 62 N. Y. 186, 196; *Davis* v. *Supreme Lodge*, 165 N. Y. 159, 167; *People* v. *Ahearn*, 196 N. Y. 221; *People* v. *Friedman*, 132 App. Div. 61.)

The real purpose of construction is the intent of the Legislature and to carry out such intent words are frequently given an enlarged or restricted meaning, and it is held that words which are plain enough in their ordinary sense will not be given their ordinary meaning when such meaning involves an absurdity, inconsistency, or when it is repugnant to the clear intention of the Legislature as collected from dependable sources of information. (*Weir* v. *Barker*, 104 App. Div. 112.) " Language of a portion of an act, which, when separated from the rest, is plain and unambiguous, may, when read in connection with the whole act, be thereby rendered ambiguous, and thereupon the necessity for construction arises " (McKinney's Cons. Laws of N. Y. [1942 ed.] Book 1, Statutes, § 76, p. 130; see, also, *People ex rel. Onondaga County Savings Bank* v. *Butler*, 147 N. Y. 164). " And, if a statute viewed from the standpoint of the literal sense of the language, works an unjust or unreasonable result, an obscurity of meaning exists which calls for judicial construction." (McKinney's Cons. Laws of N. Y. [1942 ed.] Book 1, Statutes, § 76, p. 131; *People ex rel. Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574.)

" The intent of the legislature is to be collected from the language of the statute, applied to the subject-matter, and in view of public and notorious facts existing when the statute was

enacted." (*Brown* v. *Mayor of New York*, 63 N. Y. 239, 244.)

Taking all these elements and features into consideration, I am convinced that the Legislature by the enactment of section 404-a intended to afford relief to owners of registered land by permitting the withdrawal of such registration whenever peculiar and unusual circumstances existed or exigencies appeared rendering the continued registration of the title impracticable and inexpedient, and that the true intent of the Legislature was not to limit the granting of such relief to a case where only the title itself was involved. The purpose of the statute would be thwarted and the registered owner would be in just as much the same plight, if this construction is allowed, as if the law had never been enacted, and as a " remedial " statute it would be of no consequence.

The various statutes which have been enacted providing for the withdrawal of registered land from such registration, as illustrated in the instances cited above, are a clear indication that the various legislatures have recognized the harsh condition created by the Torrens system, which made no provision for removal from the registry by authorizing withdrawal whenever unusual conditions arose which warranted a departure from the rigidity of the Torrens system, and the Legislature of New York recognized the necessity of such a form of relief by the enactment of section 404-a. The Ontario Act (*supra*) also provides that where special circumstances appear which make it inexpedient that the land should continue under the Act, the owner may apply to the Master of Titles for the withdrawal of the land from the registry; the owner must prove such circumstances and show that all interested parties consent to the withdrawal. No such limitation appears as is contained in the mentioned phrase in section 404-a. The tendency appears to lean toward enabling the registered owner to withdraw from registration in a case deemed proper by the court or other tribunal or official endowed with the authority to grant such relief.

I believe, too, that I am also warranted in giving this construction to section 404-a under the doctrine of contemporaneous construction, and while the construction placed on legislation by contemporaries is not controlling on the court, yet it may be and is resorted to as an aid in ascertaining the legislative intent. As said in *Sewell and Allington* v. *Bennett and Levi* (187 Ky. 626, 638): " The doctrine of contemporaneous construction is a very old one and of very general adoption and approval by the courts. Indeed, it has come to be universally

recognized that contemporaneous construction is a useful aid in the interpretation of statutes of doubtful meaning.''

On the principle of contemporaneous exposition '' common usage and practice under the statute, or a course of conduct indicating a particular understanding of it, will frequently be of great value in determining its real meaning '', especially where it has been acquiesced in (59 C. J., Statutes, § 608, p. 1023), and practical construction by executive, ministerial and departmental officers, while not decisive, will be given due weight (59 C. J., Statutes, § 609, pp. 1025–1028).

It appears that the Register has never before, in connection with applications made under this section, urged that withdrawal of registered titles was limited to a situation where the title itself was involved, but has placed his own contemporaneous construction on the statute as adequate and applicable to permitting such withdrawals for other reasons or causes deemed sufficient to warrant or necessitate the withdrawal of the registered lands from registration, and I am not persuaded for the reasons assigned that the change of position and the contention now advanced warrants the construction which the respondent now seeks to obtain.

Having come to this conclusion it follows that the recommendation of the Official Examiner of Title must be disapproved, and accordingly the application is granted.

Settle order.