In the Matter of the PUBLIC SERVICE COMMISSION, Being the State Division of the Department of Public Service of the State of New York, Petitioner, against GRAND CENTRAL CADILLAC RENTING CORPORATION, Defendant-Respondent.

CITY OF NEW YORK, Intervener.

Supreme Court, Special Term, New York County, April 22, 1944.

*Philip Hodes* and *Philip Halpern* for petitioner.

*John F. Collins* and *Harry Merwin* for Grand Central Cadillac Renting Corporation, respondent.

*Ignatius M. Wilkinson, Corporation Counsel* (*Francis J. Bloustein* and *Leon Mendelson* of counsel), for City of New York, intervener.

EDER, J. This is a special summary proceeding for injunctive relief instituted by the petitioner, Public Service Commission, pursuant to the provisions of section 63-g of the Public Service Law. The proceeding is predicated on the claim that the defendant operates an " omnibus line " in violation of law, in that it has not first secured the proper consent of local authorities (Transportation Corporations Law, §§ 65, 66) and the permission and approval and certificate of convenience and necessity of the petitioner (Public Service Law, § 63-d) and an order is sought enjoining and restraining the defendant from further operating said omnibus line.

The City of New York has intervened and has allied itself with the defendant in opposing the application.

It is the basic contention of the petitioner that the defendant is engaged in operating an " omnibus line " within the contemplation and meaning of subdivision 28 of section 2 of the Public Service Law, and therefore subject to the jurisdiction of the petitioner, and that the defendant is a public or common carrier within the meaning of the statute.

In opposition it is claimed that the service which the defendant renders is not of a public character, nor available to the public in general as such, but is a special and particular service available only to a special clientele, namely, airline passengers and their baggage, and also to their guests, and as well to employees and officials of divers airline companies and to certain Federal and City employees. The service which the defendant renders is that of limousine transportation of airline passengers and their baggage between the Airline Terminal Building in midtown Manhattan and the La Guardia Airport in Queens; the defendant is under contract with certain airline companies in that terminal to furnish this service to passengers possessing air travel tickets and reservations; the route is from the terminal to the airport and vice versa.

The following is an illustration of typical procedure: the passenger purchases an airline ticket; inquiry is thereupon made if he has transportation to the airport; if not, he is asked if

he desires to use the said limousine service; if he does, he is informed that a limousine will leave the terminal at forty minutes before the scheduled flight at La Guardia Field; the passenger's name is placed on a manifest list which is used for checking; announcement is thereafter made in the terminal building of the leaving of such limousine for the particular flight leaving La Guardia Field; the passenger thereupon goes to the back of the building, which is closed off from the ticket offices, and there enters a limousine, identified by a representative of the airline as the one for the flight leaving La Guardia Field for which he holds a ticket; his baggage is placed aboard the vehicle and checked; he takes a seat and, when all passengers have been seated, the limousine leaves the terminal for the airport. Before the car leaves, an airline representative checks the names of all the passengers from the manifest list; the platform used for the loading of passengers and baggage is on private property in the Airlines Terminal Building.

The car proceeds over streets designated by the Police Department for the entire trip from the time it leaves the terminal until it reaches the airport; it stops at the airport proper, which is on private property inaccessible to the public, and the passengers alight; they leave the car and proceed to the plane and the baggage is transferred from the car to the plane. No passengers are picked up from the time the car leaves the terminal until it reaches the airport; the reverse operation follows substantially the same procedure and no pickups are made from the time the automobile leaves the airport until it reaches the terminal, which is located in midtown Manhattan on Park Avenue between 42nd and 41st Streets, where passengers may leave the vehicle.

There is no solicitation at the terminal for public passengers, nor is there any solicitation along the route for passengers. For the service thus rendered each passenger is charged the sum of one dollar for a trip in each direction, plus a Federal tax of ten cents. During bad weather, when no flights leave the field, the defendant operates no vehicles to and from the terminal and the airport; if passengers are transported from the terminal to the airport and a flight is canceled, the passengers are returned to the terminal without charge and the fare paid for their trip from Manhattan to the airport is refunded.

The service which the defendant operates began with the opening of the airport; it has been operating its conveyances

from December 1, 1939, following an agreement with the City of New York acting by its then Commissioner of Docks (now its Commissioner of Marine and Aviation), which was executed on November 30, 1939, beginning December 1, 1939, for a term of ten years and ending at midnight on December 31, 1949, which agreement was approved by the Board of Estimate and adopted by resolution on December 7, 1939.

Thus it is seen that the present operation by the defendant has existed and has been continuing for over three years. Throughout this entire period and up to April 2, 1943, the enforcement of the provisions of the Public Service Law in the city of New York was vested in the Transit Commission; on that day its jurisdiction was transferred to the petitioner (L. 1943, ch. 238, eff. April 2, 1943). The defendant functioned without complaint, interference or molestation of any kind either from the Transit Commission or from anyone else; no one questioned or challenged its right to operate, and, so far as appears, neither did the petitioner in any form by communication between the Transit Commission and itself advance or convey any intimation or suggestion that the operation by the defendant of its said service violated the provisions of the Public Service Law or of the Transportation Corporations Law. Indeed, even after the petitioner succeeded to the powers of the Transit Commission, it raised no question until October 11, 1943. Up to that time neither the Transit Commission, the petitioner nor any other public body asserted or claimed to the defendant that it had jurisdiction as now claimed by petitioner of the operations of the defendant.

The petitioner argues throughout that the language of the statute is clear and leaves no doubt that the defendant comes within the purview of its provisions as an omnibus line. The statute (Public Service Law, § 2, subd. 28), so far as here pertinent, reads as follows: " The term ' omnibus line,' when used in this chapter, means a motor vehicle or motor vehicles operated for the *use* and *convenience* of the *public,* usually along the same route or between stated termini, or on a fixed or stated schedule, carrying passengers for hire, and the property and equipment used in connection therewith." (Italics supplied.)

Petitioner's brief refers to some definitions of the term " public," in connection with its use as it relates to " common carrier." These terms have received numerous definitions, and the expressions are varied. However, it is manifest that their proper application must depend upon the particular facts of

each particular case. None do or can furnish an all-inclusive pattern of general application; this is apparent from the varied and multiple definitions which abound.

Thus, the matter must be viewed in the light of reality for only by this method of approach and consideration can a correct result be achieved. If, as petitioner seems to insist, the literal letter of the statute be adhered to, instead of its intent, it impresses me as being illustrative of the expression that " the letter killeth but the spirit giveth life."

There is, in the instant case, no real problem involved, nor any difficulty of solution when the matter is considered in the light of reality; it is only when fiction takes the place of fact that difficulty is encountered and clarity becomes opaque.

The evidence presented by the opposition has not been successfully combatted by the petitioner; indeed, it has not been met at all. Nothing of an evidentiary nature has been produced in support of the fundamental allegations of the petition. All that I have been able to find which might raise a factual issue are statements contained in the brief of the petitioner, which, when checked back with the petition, find no support therein by way of allegation, or through supporting affidavits, and none are submitted; such statements are, of course, disregarded; statements in a brief are not evidence.

The proof submitted by the defendant affirmatively disproves the petitioner's claims, and, in my opinion, sufficiently and adequately establishes that the defendant is not engaged in operating an omnibus line within the meaning and intent of subdivision 28 of section 2 of the Public Service Law and is not operating or functioning as a public or common carrier, viewing the matter in the light of reality, and that, so regarded and considered, the operation to and from the terminal and the airport is nothing more than an extension of the airline travel. These, and the other factual matters to which I have alluded, I find to be the facts.

I shall now discuss another angle which I consider of importance and it is the element of contemporaneous construction.

As has been previously pointed out — and it is without dispute — throughout the period of defendant's operation and while petitioner's agency, the Transit Commission, was functioning, it at no time regarded or even intimated, in the remotest degree, that the activity of the defendant rendered it subject to its jurisdiction or that its operation constituted a violation of the mentioned statutes, and its acquiescence can only be

regarded as being its practical construction of these enactments to the effect that they were inapplicable to the defendant and the enterprise in which it was engaged. Such effect must also be given to the acquiescence of the petitioner in the interval from April 2, 1943, when it succeeded to the jurisdiction and powers of the Transit Commission, and up to October 11, 1943.

No reason has been assigned by the petitioner why the contemporaneous construction, implied though it be, of the Transit Commission, should be overruled, nor has any explanation been vouchsafed by the petitioner for its present attitude over that which prevailed prior to October 11, 1943; what motivated this radical change must therefore be left in the realm of conjecture.

Where public officials are charged with the administration of particular laws, their construction with respect thereto, though not binding on the courts, will be given due weight (*Matter of Carns* [*Ralph*], 181 Misc. 1047; *Matter of Cornell Apartments Corp.* v. *Corcoran*, 182 Misc. 660) and this is so whether the construction results from affirmative declaration or from acquiescence. (*People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405, 411.)

The foregoing summary and analysis establish to my satisfaction that no factual or legal basis exists warranting the institution of this proceeding against the defendant and that the petitioner's claims of purported violations of the aforementioned statutes are groundless.

Accordingly, the application for an injunction is denied, and the petition and proceeding are dismissed. Settle order.