THOMAS SISSIAS, Plaintiff, *v.* MORRIS PERLMUTTER et al., Individually and as Copartners Doing Business under the Name of PERLMUTTER and RAPPOPORT et al., Defendants.*

Supreme Court, Special Term, New York County, February 23, 1945.

---

* See, also, *Twentieth Century Associates* v. *Waldman,* 184 Misc. 24, and footnote thereto.— [REP.

*Goodman & Werner* for plaintiff.

*Morris H. Switzer* for Morris Perlmutter and another, defendants.

*Wilfred S. Stachenfeld* for Ely Holding Corporation, defendant.

SHIENTAG, J. The plaintiff, a manufacturer of fur coats, has been the occupant of a portion of the tenth floor of a commercial building under a sublease from one Irving Levy. Plaintiff moves for a temporary injunction to restrain the defendants, the present lessees of the tenth floor, and the owner of the building, from interfering with his use and occupancy of the premises, claiming that he is entitled to the benefits of the recently enacted Commercial Rent Control Law. (L. 1945, ch. 3, eff. Jan. 24, 1945). Concededly the space here involved is commercial space as defined by that law. The case presents an unusual situation necessitating a statement of the facts in some detail.

Plaintiff's sublessor, Irving Levy, on September 24, 1943, rented the entire tenth floor under a lease entered into by him with the defendant Ely Holding Corporation for the period from February 1, 1944, to January 31, 1945. On January 24, 1944, plaintiff rented from Levy the center part of the tenth floor under a written lease which also expired on January 31, 1945. This lease provided that the tenant was to have the privilege of using Levy's showroom. Plaintiff during the term of his sublease kept his stenographer, his office files and his telephone in Levy's show room. There he conferred with customers, buyers and visitors. The center portion of the tenth floor, moreover, was so located that in order for the plaintiff, the subtenant, to have access to the freight elevator, it was necessary to have his merchandise carried through the premises occupied as a factory by his lessor, Levy. This plaintiff was permitted to do during the term of his lease. He further asserts that " In order to facilitate the use by me of the show room and the right of ingress and egress to and from the freight elevator, Levy delivered to me a duplicate set of keys of his factory and the show room, which I still have." In addition to all of the foregoing, Levy furnished the plaintiff with electric current and gave him the privilege of storing certain machines in Levy's factory in a space of about fifteen feet by six feet. There is nothing in the papers before me tending to show that the landlord knew of any such arrangement or in any way acquiesced therein.

Toward the end of 1944 plaintiff decided to move. In November, he made a lease for space in another building on the same street, pursuant to the terms of which he was to enter into possession at or about the time of the expiration of his old lease. The tenant in the other building, however, failed to vacate; he

remained in possession under the emergency statute which became effective on January 24, 1945. In the meantime Levy, as he was required to do under his lease, vacated and surrendered the premises to the owner. On December 26, 1944, after Levy had advised the owner that he would not continue as a tenant, the owner entered into a lease with the individual defendants, Perlmutter and Rappoport, for the entire tenth floor for a term of two years, commencing February 1, 1945. The owner then offered plaintiff space in another building, but plaintiff refused for the reason, as he states, that it was out of the fur district.

The individual defendants took possession of the premises under their lease with the owner. They began to make alterations in the showroom and denied the plaintiff all privileges there and refused to permit plaintiff to have access to the freight elevator through their factory.

The question to be determined is whether in the light of all of the foregoing the plaintiff is entitled to the protection of the Commercial Rent Control Law, and if so, to what extent.

Section 8 of the emergency commercial rent statute provides (with exceptions not here pertinent) that: " So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any commercial space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act ".

The term " tenant " is defined as " A lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any commercial space." (§ 2, subd. [i].) Under the Office of Price Administration Rent Regulation for Housing in the New York City Defense-Rental Area, a subtenant of a tenant whose lease has expired or otherwise terminated, no part of the housing accommodations being used by the tenant as his own dwelling, is not entitled to continue in possession (§ 6, subd. [a], par. [4]; 8 Fed. Reg. 13918). There is no such specific exception in the new Commercial Rent Control Law; the term " tenant " in that law is given a very broad meaning and is apparently not limited to its restricted legal connotation.

This new statute, broad as it is in its scope, should receive a reasonable construction by the courts. It was designed not to penalize landlords or to favor tenants, but to meet an emergency found by the Legislature to exist, which threatened " to obstruct war production and the production and distribution of essential civilian commodities, and to cause inflation * * * being a threat to the successful prosecution of the war and essential civilian activities, and to the public safety, health and general welfare of the people of the state of New York " (L. 1945, ch. 3, § 1). Clearly in its essential purposes the act is valid and constitutional and it should not be construed so as to raise any grave doubt on that score.

Whatever may be the rights of subtenants generally as against the owner as well as their immediate lessors (I do not pass upon that question on this motion), the plaintiff under the circumstances of this case is not entitled to the injunctive relief he seeks. The privileges which he asserts and which have heretofore been enumerated are essentially personal in character and are based upon his personal relationship with his immediate lessor. As such they terminated when his lessor vacated the premises and are not within the purview of the emergency statute. Without those privileges plaintiff's continued possession of the premises would be an illusory right. Under those circumstances equity will not interfere by temporary injunctive relief. The motion for a temporary injunction is accordingly denied.