TRADE ACCESSORIES, INC., Landlord, Respondent, *v.* ROBERT BELLET et al., Tenants, Appellants.*

Supreme Court, Appellate Term, First Department, May 16, 1945.

* See, also, *Blitzkrieg Amuse. Corp.* v. *Rubenstein Bros. Drinks,* 184 Misc. 975.—[REP.

*Elihu J. Zwilling* for appellants.

*Edward Goodell* for respondent.

HAMMER, J. The landlord is a manufacturer which rented by lease from the owner of the building the entire loft on the third floor at 270 West 39th Street, Manhattan, New York City. From 1941 to August, 1943, it occupied the entire space. In August, 1943, the landlord sublet a portion of the space to the tenant for six months for the " manufacturing and sale of coats

and suits ''. During that month the owner renewed the landlord's lease for a term expiring January 31, 1945. Shortly after the landlord extended the tenant's term to January 30, 1945. The landlord at the expiration demanded that the tenant vacate, which demand was refused upon the ground that the tenant was protected from removal by the Emergency Rent Law effective January 24, 1945 (L. 1945, ch. 3). The landlord brought this proceeding upon a petition alleging the tenants were holding over and the landlord needed the premises in good faith for its own commercial use relying on the exceptions in subdivision (d) of section 8 of the act. The issue whether the landlord needed the premises in good faith was submitted to the jury which found for the landlord. The question at issue here is whether the landlord under the facts thus found, within the provisions of the act, particularly subdivision (d) of section 8, may recover possession of the premises occupied by the tenant. This requires a judicial construction. Section 8 as applicable and subdivision (d) thereof as written would not include the landlord here. They read as follows: " § 8. So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any commercial space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminatied, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act, unless: * * * (d) The landlord owned or acquired an enforceable right to buy or take possession of the building on or before the effective date of this act and seeks in good faith to recover possession of the commercial space for his immediate and personal use for commercial purposes; or possession is sought by a person who acquires title to the building subsequent to the effective date of this act, and who likewise seeks in good faith to recover possession of the commercial space for his immediate and personal use for commercial purposes, provided, however, such person has an equity in the property of not less than twenty-five per centum of the purchase price; and provided, further, that nothing in this paragraph contained shall authorize the dispossession of a tenant during the term of his lease, by his landlord or by any such subsequent purchaser unless by the terms of the lease the privilege is reserved to terminate the lease upon sale of the building; * * * ."

Respondent argues that subdivision (d) must be construed in the light of the definition set forth in section 2 of the act, the applicable portion of which reads as follows: " § 2. Unless expressly otherwise provided, whenever used in this act, the following terms shall mean or include: * * * (h) 'Landlord.' An owner, lessor, sublessor, receiver, trustee, executor, assignee or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any part of any commercial space."

The act was declared by the Legislature to be designed to protect and promote the public health, safety and general welfare, to aid the successful prosecution of the war and essential civilian activities, and to prevent inflation; and to be made necessary by an existing public emergency against unjust, unreasonable and oppressive leases and agreements for the payment of rent for commercial space in certain cities being exacted by landlords from tenants under stress of prevailing conditions accelerated by the war under which freedom of bargaining and contract has become an illusory concept (L. 1945, ch. 3, § 1). Obviously the statute was not intended as an indictment of all landlords but rather as a remedy against evils which were being indulged in by some and were available for practice by any others who might desire to take advantage of the existing emergency. In a democracy fundamentally the power to enact statutes is resident in the people or their legislative representatives. The United States Constitution has vested the power of making laws in the Congress, and each State Constitution created and vested the lawmaking power in the State Legislature, although for some purposes the people by constitutional provision retain legislative power. A State Legislature possesses all powers of lawmaking inherent in sovereignty except as curtailed by State or Federal Constitution expressly or by necessary implication. The Legislature may deal with every element of human experience involved in the life of the community and the sweep of its vision is as wide as the confines of human knowledge. As legislative power is unlimited except by constitutional provision and necessary implication, the wisdom, reasonableness and expediency of statutes duly enacted are the concern of the Legislature and the statutes must be accepted by the courts as written and accorded the presumption of validity, even though particular provisions to some of the judiciary may seem oppressive or unfair. The Emergency Rent Law of New York, chapter 3 of the Laws of 1945, is a general law operating on a subject in which the people at large are interested, although

its enforcement may be restricted somewhat to localities which contain buildings having space commercially rented. The Legislature is vested not only with an exclusive power to determine when an emergency exists but also with that of providing the particular measures and manner of enforcement designed to remedy existing evils, and designating the classes of persons in respect of whom the provisions of the law shall be applicable. In our opinion the provisions of subdivision (d) of section 8 read in conjunction with subdivision (h) of section 2 may not be construed reasonably to include the landlord here within the class of landlords designated in subdivision (d) of section 8 who not only are landlords but who also owned or acquired an enforcible right to buy or take possession of the building on or before the effective date of the act; or are persons who acquired title to the building subsequent to such effective date. Subdivision (d) of section 8 also requires that such person have an equity in the property of not less than 25% of the purchase price, and further provides the tenant may not be dispossessed during the term of his lease '' unless by the terms of the lease the privilege is reserved to terminate the lease upon sale of the building ''. The definition contained in subdivision (h) of section 2 was clearly intended to designate the persons who as landlords were in the class capable, because of the destruction of freedom of bargaining and of contract, of exacting unjust, unreasonable and oppressive leases from tenants of commercial space under the stress of prevailing conditions. The evils to remedy which the statute was enacted were such as could be practiced by the persons therein defined as landlords. Section 8 provides that no tenant shall be removed from the premises so long as the tenant pays the rent to which the landlord is entitled, unless the tenant is guilty of violation of one of the provisions of subdivisions (a), (b) and (e) of section 8 or the landlord comes within the exceptions provided in subdivisions (c) and (d).

It is true that these clauses must be read together. But both clauses must also be read in harmony with the entire act to carry out both its remedial and beneficent intent and to accord each part and the whole the presumption of constitutionality to which they are entitled. Thus read it is seen that the Legislature had clearly stated its intention. The language used is without any ambiguity, indefiniteness or obscurity and must be accepted exactly as it is written. As clearly written the statute must be enforced by the courts.

In *Sissias* v. *Perlmutter* (184 Misc. 174, 178) SHIENTAG, J., (a member also of the Appellate Term) in upholding the constitutionality of the Emergency Commercial Rent Law under consideration, said: " Clearly in its essential purposes the act is valid and constitutional and it should not be construed so as to raise any grave doubt on that score."

In *Rosen* v. *370 West 35th St. Corp.* (184 Misc. 172) SHIENTAG, J., also said: " The primary consideration and duty of the court is to ascertain and give effect to the intention of the Legislature in enacting the emergency statute. * * * the act expressly prohibits the eviction of a tenant from any commercial space by action or proceeding or otherwise, notwithstanding that such tenant has no lease * * * ."

The purpose of the act is to deal with evils arising in the emergency because of the relationship of landlord and tenant. Owners of buildings, and those who have enforcible rights to buy or take possession of buildings and those also who acquire title to buildings subsequent to the effective date of the act, have additional rights not necessarily involved in such a relationship. Obviously the Legislature intended to make provision to harmonize its prohibitions in respect of landlords with its consideration of and concern in respect to ownership rights and accomplished that reasonable result in the provisions of subdivisions (c) and (d) of section 8.

In our view there was no discrimination in favor of some landlords as against others of the same class, and subdivision (d) of section 8 must be held a valid exercise of legislative power not violative of any provision of the Constitution of New York State or of the United States.

It is noted that the act was amended on March 28, 1945 (L. 1945, ch. 315), *inter alia* as to subdivision (d) of section 8, by providing additional safeguards for tenants in the way of further conditions prescribed for owners and those claiming possession of the entire building under them as prerequisites to a claim for demised space for personal occupation. Damages were also provided for the tenant where the landlord has dispossessed him and failed to occupy the demised premises and to conduct business therein within thirty days after such a dispossess, or where any third person was given possession by the landlord, within six months.

The amendment, while providing more stringent conditions for obtaining possession, did nothing which indicates a change of the intention previously expressed in subdivision (d) of section 8 of the original act.

As we have come to the conclusion that the language and context of the statute are plain and unambiguous and clearly and obviously express the legislative intent, which does not conflict with constitutional provisions or organic law nor lead to any absurdity, we are of the opinion that this court must accept the meaning and intent expressed in the language used. If the provisions referred to can be regarded as contradictory, reading them in harmony one with the other and also with the other provisions of the statute, we see no unreasonable or discriminatory exercise of legislative power. The remedies provided protect tenants, of which the landlord here is one, in bargaining and contract and also in their possession against evils which arose in the emergency unless they were guilty of certain enumerated violations. The statute also reasonably reserved to certain enumerated building owner landlords rights which were theirs by reason of ownership, as distinguished from the relationship solely of landlord. Landlords who come within the definition given under subdivision (h) of section 2 and are not owners within the intent expressed in subdivisions (c) and (d) of section 8 seem to us to have been reasonably excluded from the rights therein reserved to such owner-landlords. If others should have been included, the process of inclusion is a legislative one and may not be accomplished through the exercise of judicial construction.

It follows from the foregoing that the final order in favor of the landlord must be reversed, with $30 costs, and the petition dismissed on the merits, with costs.

EDER, J. (dissenting). The tenants appeal from a final order in favor of the landlord awarding it possession of the premises in concern. The appeal presents for consideration certain sections of the newly enacted Emergency Commercial Rent Law. (L. 1945, ch. 3, as amd. by L. 1945, ch. 315.)

The respondent occupies a third-floor loft in a business building a part of which loft it sublet to the appellants; the tenancy has expired but the appellants continue in possession and hold over without permission and claim the right to do so by virtue of the mentioned statute.

The present war has produced an abnormal and wholly unforeseen shortage of commercial space; landlords in general, of every type, as owners, lessors or sublessors of entire buildings as well as of only parts thereof seized upon this condition and exploited it to the utmost by indulging in wartime rent profiteering, exacting exorbitant rents and in the case where the term of the demise had expired and the tenant refused to submit to

the demand, evicting the tenant as a holdover and thereby brought about a condition of such unusual and extraordinary degree as to greatly affect the public welfare, threaten and imperil the successful prosecution of the war and seriously hamper essential civilian activities.

The landlord's formidable weapon was composed of two potent factors, viz., the common knowledge of the existence of this shortage of commercial space and of his right to evict the tenant after the expiration of the term; this knowledge compelled the tenant's submission, for the practical, if not the actual impossibility of the tenant's securing other commercial space was well known to both; landlords were ruthless; tenants, helpless.

Lack of commercial space retarded and was continuing to retard production of critical war materials and essential war items as well as items essential for the needs of the populace; this condition was reaching, if it had not already reached, dangerous proportions; it had arrived at the stage where State intervention and control seemed imperative in the interest of the public welfare and to accomplish the successful prosecution of the war. The Legislature took cognizance of this distressing and alarming situation and thereupon conducted an inquiry; as a result of the investigation it found and declared that a public emergency existed and that the State must intervene; it found, among other needs, that the landlord's rental charges should be controlled, revised and limited to a reasonable sum, and further, that his most potent weapon, the right to evict a tenant after the expiration of the term, should be curtailed, suspended for the duration of the emergency, except in instances specially provided for. It enacted such legislation. One of the exceptions is to permit a landlord to institute and maintain a summary proceeding where he seeks to obtain possession of the premises, in good faith, for his immediate and personal use. The respondent claims to come within that exception; this is disputed by the appellants; the challenge has resulted in the ultimate transfer of the controversy to this court.

Only two sections of this law concern us upon this appeal, i.e., subdivision (h) of section 2 and subdivision (d) of section 8. The tenants assert that the respondent's right to institute and maintain this summary proceeding is governed and controlled by the provisions of subdivision (d) of section 8 and that the respondent did not and cannot qualify thereunder, hence the petition and proceeding should have been dismissed. On the other hand, the respondent maintains that subdivision (d) of section 8 must be read in connection with subdivision (h) of

section 2 and also in conjunction with this statute as a whole to obtain the true legislative intent; that so considered and sensibly construed, the respondent has qualified thereunder and was therefore entitled to proceed as it did and that the final order was properly awarded and should accordingly be affirmed.

Considering the background of this emergency statute it is quite evident that the legislative purpose and intent were to prevent wartime rent profiteering in commercial space, by means of the limitations, restrictions and proscriptions adopted; that the legislation was aimed at the destruction of this menace whether the profiteering was indulged in by an owner-landlord, by a lessor, sublessor or any other type of landlord and irrespective of whether he was landlord of an entire building or of only a portion thereof; that such was its fundamental purpose; that these legislative curbs were but means toward attaining the same result, namely, the elimination of such rent profiteering. It is also clear that all landlords were regarded as common offenders and that the law was designed to be of general application and scope, of an all-inclusive character, intended to embrace every type of landlord, of both high and low estate, without distinction of any sort.

This view is sustained by the broad language of subdivision (h) of section 2 which is a statute of general inclusion for it is there declared that the landlord referred to in this law and made amenable to its provisions is not only an owner but that also included in the term " landlord " is a lessor, sublessor, receiver, trustee, executor, assignee, or any other person entitled to receive rent for use or occupancy of any commercial space, whether of the whole or of any part thereof. Neither ownership of the premises, nor the size thereof, is of any consequence; it is the single fact that one possesses the status of a landlord as therein defined that is the all-important element; once that exists the statute becomes immediately operative; to come within the term " landlord " one need possess no other qualification or status than there prescribed. The respondent is, therefore, a landlord coming within and subject to the provisions of this emergency law.

Since, as mentioned, this legislation is one of general inclusion, intended to bring all landlords within its ambit and basic objective, without regard to proprietary interest or size of estate, it would seem reasonable to suppose that all landlords would be privileged to enjoy alike any exception therein permitting a landlord to obtain possession of the premises, in good faith, for his immediate and personal use, and that with respect

thereto no discrimination would be made. It is at this point that the disturbing element makes its appearance; it is section 8 which deals in general with the right of the landlord to acquire possession, declaring when and upon what conditions he may seek it.

In the case at bar it is subdivision (d) of section 8 that is involved. It places quite a different complexion on the term "landlord", strongly at variance with subdivision (h) of section 2, and not alone does it involve a substantial change but it also limits its meaning and restricts its application with regard to the exception which it contains. It withdraws the general suspension of the right and remedy of all landlords to gain possession during the period of the emergency and such right and remedy are restored and made available but only to a particular class, to one who is an owner-landlord of an entire building; the phrase "the building" is here employed though neither in subdivision (a) nor in subdivision (h) of section 2, does such an expression appear, and who, in addition, has an equity in the property of not less than 25% of the purchase price and also possesses an interest of not less than 50% of the whole investment in the business which he proposes to carry on in such space. As hitherto stated, he must seek to obtain such possession, in good faith, for his immediate and personal use.

Thus this subdivision wholly displaces and excludes not alone lessors but every other type of landlord mentioned in subdivision (h) of section 2 as coming within the operation of this emergency law, both as originally enacted, and as amended. Thereby, even a lessor or sublessor of an entire building is excluded, though he needs and desires possession of the premises, in like good faith, for immediate and personal use, for he lacks the proprietary interests therein imperatively required and made conditions precedent.

The respondent argues that in view of the history of this legislation, and the general scheme thereof, it is obvious that the Legislature intended to treat all landlords alike as to limitations, prohibitions and exceptions, and that it did not intend to permit a particular type or class to obtain such possession and to deny it to all others seeking like possession simply because in the one instance the landlord possessed an estate of ownership; that it would be unreasonable to attribute such an intention to it and therefore such a construction should be given as will avoid an absurd and unjust result; the respondent suggests that the literal language of subdivision (d) of section 8 be rejected as contrary to the spirit and intent of the act, that the

mere letter thereof be discarded and that this court so construe the law as to eliminate, as though never embodied therein, all requirements other than a showing by the landlord that possession is sought, in good faith, for his immediate and personal use, thus placing all landlords on a par with respect to the right to obtain such possession. This is a premise that carries its measure of merit for it is supported by a recognized rule of statutory construction adopted and employed to conserve the spirit and intent of an act over the mere letter (*People* v. *Ryan*, 274 N. Y. 149, 152; *Surace* v. *Danna*, 248 N. Y. 18, 21; *American Dock Co.* v. *City of New York*, 174 Misc. 813, affd. 261 App. Div. 1063, affd. 286 N. Y. 658; *Matter of Carns* [*Ralph*], 181 Misc. 1047, 1055). Under such a construction the respondent would come within the exception.

But the force of this rule is effectively neutralized, if not rendered completely impotent, by the precept that where the Legislature has by direct and unequivocal expression clearly indicated its intent the court has no discretion but to effectuate it though the law appears to be harsh and apparently unjust; that the evils attendant upon the enforcement of a statute cannot control its construction if its meaning is clear, and in such case the courts must carry it out regardless of consequences. (*Rosenplaetner* v. *Roessle et al.*, 54 N. Y. 262, 265; *Hyatt* v. *Taylor*, 42 N. Y. 258, 261, 262; *People* v. *Fornaro*, 65 Misc. 457; McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 148; Crawford on Statutory Construction, § 177, p. 287.)

By language explicitly clear, by the use of unambiguous expressions, by the employment of carefully chosen words, by deliberate additions, as amendments to the existing law, the Legislature has, by the enactment of subdivision (d) of section 8, manifested a clear intention, susceptible of but one possible meaning or construction, namely, that it shall be applicable only to the particular class therein described and to no others. For this reason the afore-stated premise is untenable.

The force and effect of subdivision (d) of section 8 cannot be ignored and must be held to deprive the respondent of any right or remedy to obtain possession and to bar it from maintaining this proceeding, and to require its dismissal, unless some substantial ground appears which renders it ineffectual, for, admittedly, the respondent did not and cannot meet its requirements with respect to ownership of the entire building and the prescribed investment therein. I am of opinion, however, that such a substantial ground is present in the claim that if subdivision (d) of section 8 cannot be given the suggested construction

it is then invalid as denying to the respondent the equal protection of the laws in contravention of the National Constitution (14th Amendt., § 1), and, also, the Constitution of the State (art. I, § 11).

It is well-settled law that no person has a vested or property right in any particular form of remedy prescribed by the State and that it may withdraw or condition it as it sees fit to do; thus, it is held that the equal protection clause does not exact uniformity of procedure and that the Legislature may classify litigation and adopt one type of procedure for one class and a different type for another (*Dohany* v. *Rogers,* 281 U. S. 362, 369), but the classification must not be arbitrary as to persons or things similarly situated; to be valid the classification must rest upon some ground of difference having a just and reasonable relation to the accomplishment of. a legitimate public object (*Hartford Co.* v. *Harrison,* 301 U. S. 459, 461, 462; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429, 441, 447), and a statute of procedure offends the equality clause if it discriminates against a particular class of actions or persons without apparent reason for the distinction. (*Board of Education* v. *Alliance Assur. Co.,* 159 F. 994, 999.)

Neither subdivision (d) of section 8, nor this emergency law in general, indicates any reason for the classification permitting one class of landlords to obtain possession and denying the same right and remedy to all others; it appears to be an arbitrary selection (*Gulf, Colorado & Sante Fé Ry.* v. *Ellis,* 165 U. S. 150, 159); it confers a particular privilege upon and grants a special advantage to one class of landlords and denies to landlords of every other class the exercise of a common right and remedy theretofore enjoyed alike by all; it gives that right and remedy to a class arbitrarily chosen, so far as appears, from the general body of those who occupy the same relationship to a tenant.

While the State has a wide discretion with respect to classifying litigation and procedure, yet, as said, it must be so exercised as not to be unreasonably arbitrary, or unduly oppressive; here, subdivision (d) of section 8 involves discrimination of an unusual character, with no reason assigned or manifested why a particular class of landlords is excepted from the general operation of the law.

The unreasonable arbitrariness of this exception becomes all the more pronounced when due heed is paid to the fact that this legislation was enacted for the benefit of the helpless commercial tenant, who was being garrotted, so to speak, by the avaricious

landlord's demands; the primary motive of the Legislature in the passage of this law certainly was not the landlord's interest or convenience; this statute was enacted in the interest of the tenants, to secure to those whose term had expired or might expire during the existence of the emergency, continued possession, at a reasonable rent. As for the landlord, his convenience or desire for possession was purely of secondary import, a matter of minor concern, indubitably attested and demonstrated by the very fact that the previously existing rights and remedy, common to all landlords, to evict a holdover tenant, were taken from them; yet, without any apparent reason for the discrimination, this right and remedy was saved for and given to a special class; this is an unjust and unreasonable discrimination because it denies to all other landlords the equal protection of the laws and hence offends the afore-mentioned constitutional provisions.

It is apparent that the Legislature, by the enactment of subdivision (d) of section 8, intended to grant to a landlord some measure of alleviation, and to permit him, during the emergency period, to obtain possession of the premises, if he required it, in good faith, for his immediate and personal use; it had the power to so provide, but, in doing so, however, it transcended its power only to the extent that it made an unauthorized discrimination; except as to this feature the provision is otherwise valid. Section 14 (formerly 13; L. 1945, ch. 3, as amd. by L. 1945, ch. 315) of the act provides that partial invalidity with respect to any provision shall not result in complete nullification. Accordingly, subdivision (d) of section 8 must be held to be valid insofar as it authorizes a landlord as defined in subdivision (h) of section 2 to seek possession of the premises, in good faith, for his immediate and personal use, and that it is otherwise invalid.

The respondent was, therefore, entitled to institute and maintain the proceeding.

On the issue of fact whether the respondent required the premises, in good faith, for its immediate and personal use, the jury returned a unanimous verdict in favor of the landlord; its finding has support in the evidence. As to the other contentions presented by the appellants they are regarded as unpersuasive.

The final order should be affirmed, with $25 costs.

HECHT, J., concurs with HAMMER, J.; EDER, J., dissents in opinion.

Order reversed, etc.