THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALEXANDER R. CROSSMAN, Appellant.

Crimes — maintenance of " bucket shop "— accomplices — erroneous ruling that witnesses who took active part in business with knowledge that it was unlawful were not accomplices — erroneous holding that acts done by witnesses were subsequent to and detached from transaction complained of — evidence sufficient to warrant finding that witnesses were part of organization and parties to a conspiracy to violate the law.

1. An accomplice is one who at common law might have been convicted either as a principal or as an accessory before the fact.

2. On trial of an indictment charging defendant with the crime of violating section 390 of the Penal Law, which relates to and prohibits the maintenance and conduct of " bucket shops," it was error for the trial judge to rule as matter of law that two witnesses were not accomplices and to refuse to submit to the jury their status in that respect, where the evidence showed, as to one, that in addition to allowing the use of his name in what purported to be a *bona fide* corporation and accepting the presidency thereof, he was present in the office, talked with customers, made and indorsed checks and affixed his name to purported confirmation letters sent to customers and to market letters sent to prospective customers and in addition at times took and kept part of the money paid in by customers on transactions carried on with the establishment, and as to the other, that as her principal duty she had charge of the books of the concern whereon were carried fictitious and misleading accounts and also at times received money paid in by customers and made out receipts

therefor, and both understood perfectly well that for some time before the occurrence of the particular event complained of the business being carried on and in the conduct of which they were taking part was unlawful.

3. A holding that, in the specific transaction upon which rests the conviction, there was a precise completed agreement made between the customer and the defendant for the purchase of the stocks in question, and that thereby the contract was made and perfected, and that the acts done by each of these witnesses in connection with these transactions were subsequent to and detached from the making of the contract and that, therefore, neither witness was a party to it, places too narrow an interpretation upon the words of the statute and excludes acts which were part of the making of the contract. There is no conclusive evidence of any contract by the customer until he came into the office and ordered the stocks and paid his money for margins. In the case of one transaction this money passed into the hands of one witness, who kept part of it and who, presumably, signed letters confirmatory of both transactions. In one transaction the money passed through the hands of the other witness and she made out receipts for it, and one of those receipts recited that this money was " to be used as margin in this account for the purchase and sale of securities," and in addition she entered the transactions upon the books of the company. A jury could find that these acts were so related to the transactions whereby these particular contracts were made that these witnesses, with their guilty knowledge of the crime which was being committed, assisted in committing it and were accomplices.

4. Beyond this, with entire knowledge of its criminal purposes, a jury could say that each of these witnesses became, some time before the transactions in question, part of the organization whose purposes were to fleece victims by bucket shop methods, and in addition could find from the facts a conspiracy to which the witnesses were parties generally to strip any and all victims who might come along and for that purpose to make with any one of them a contract specified and forbidden in the statute under which this defendant has been convicted. These witnesses thereby became parties to and were criminally responsible for any transaction within the scope of the conspiracy conducted by this organization or any member of it in carrying out its purposes and were parties to and accomplices in respect of the transaction under review and the court should so have charged. (*People* v. *Swersky*, 216 N. Y. 471, explained.)

*People* v. *Crossman*, 211 App. Div. 673, reversed.

(Argued June 12, 1925; decided October 6, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 6, 1925, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York, rendered upon a verdict convicting the defendant of the crime of a violation of section 390 of the Penal Law.

*George Z. Medalie* for appellant. The court erred in refusing to charge, as requested, on the accomplice character of Livingston and Erlich. (*People* v. *Zucker*, 20 App. Div. 363; 154 N. Y. 770; *People* v. *Kupperschmidt*, 237 N. Y. 463.) The existence of a conspiracy makes every party thereto a principal, and, therefore, an accomplice in the perpetration of every crime committed within its scope. (*People* v. *Chapman*, 224 N. Y. 463; *People* v. *Collins*, 234 N. Y. 355; *People* v. *Giusto*, 206 N. Y. 67; *People* v. *Giro*, 197 N. Y. 152; *Ruloff* v. *People*, 45 N. Y. 213; *People* v. *Demasco*, 240 N. Y. 170; *People* v. *Swersky*, 216 N. Y. 471; *People* v. *Sweeney*, 213 N. Y. 37; 161 App. Div. 221; *People* v. *Katz*, 209 N. Y. 311; *People* v. *Elliott*, 155 App. Div. 486; *People* v. *Doyle*, 107 Misc. Rep. 268.)

*Joab H. Banton, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The alleged accomplices, Livingston and Erlich, could not be stamped as accomplices unless it appeared by testimony that they were principals, as defined by Penal Law, section 2, in the very act of " making " for which defendant was convicted. (*People* v. *Lowe*, 209 App. Div. 498; *People* v. *Toohil*, 208 App. Div. 174.) The two witnesses were not principals; hence, they were not accomplices. (*People* v. *Zucker*, 20 App. Div. 363; 154 N. Y. 770.) The guilty knowledge of the alleged accomplices established nothing. (*People* v. *Swersky*, 216 N. Y. 417; *People* v. *McGuire*, 135 N. Y. 639; *People* v. *Zucker*, 20 App. Div. 363; 154

N. Y. 770; *People* v. *Cohen*, 223 N. Y. 406; *People* v. *Elliott*, 155 App. Div. 486.)

HISCOCK, Ch. J.   The appellant has been convicted of the crime of violating section 390 of the Penal Law.   This section relates to and prohibits the maintenance and operation of what are ordinarily known as " bucket shops " and transactions such as are carried on by those institutions.   There are two counts in the indict- ment, each under a separate provision of the section, but on the trial consideration of one of these was dismissed and the defendant was convicted simply and solely under subdivision 1 of said section which, so far as material, reads as follows:

" Any person   *   *   *   whether acting in his, their or its own right, or as the officer, agent, servant, corre- spondent or representative of another, who shall, (1) make or offer to make, or assist in making   *   *   *   any contract respecting the purchase or sale either upon credit or margin of any securities   *   *   *   shares in any corporation or association   *   *   *   intending that such contract shall be terminated, closed or settled; according to, or upon the basis of the public market quotations or prices made on any board of trade or exchange   *   *   *   without intending a *bona fide* pur- chase or sale of the same " shall be guilty of a felony.

On evidence which on its face fully justified its action the jury found that the defendant was guilty of violating this section and that action has been unanimously affirmed by the Appellate Division.   The evidence, however, upon which appellant was convicted was largely supplied by two witnesses named Livingston and Erlich and, by exceptions which were sufficient for that purpose, the question was presented whether these witnesses were not accomplices and their evidence, there- fore, subject to all of the limitations and infirmities which are imposed by law upon the evidence of accomplices.

The trial court not only refused to submit to the jury the question whether they were such accomplices but affirmatively ruled as matter of law that they were not and we are, therefore, led to a consideration of the question whether he was correct in his view of their status.

For the purpose of carrying on his obnoxious and unlawful operations the defendant organized a corporation which was known as S. M. Livingston & Company, Incorporated. The title which was adopted thus employed the name of one of the witnesses referred to. The corporation was a mere shell and cover, most of the small number of shares of stock being issued to some person who is assumed to have been a dummy for the defendant and one share being issued to the witness, Livingston, who was made president of the corporation. The transactions conducted by it with one inconsequential exception were purely and wholly of the bucket shop order. No stock was actually bought or sold on the orders of customers whose moneys were taken but, at the close of each day, from some newspaper market report a buying customer was charged with the highest price at which his stock had sold during the day and a selling customer credited with the lowest price at which his stock had sold. In order to carry on these unlawful transactions and maintain an appearance of reality a customer was charged or credited with amounts thus made up against two fictitious accounts which were carried on the books and it is not too much to assume in view of the regular custom of stockbrokers, that transcripts of these fictitious accounts were furnished to customers and settlements made on the faith of them.

Livingston was undoubtedly more or less under the domination and orders of the defendant but nevertheless he performed substantial acts in carrying on this business. In addition to allowing the use of his name in what purported to be a *bona fide* corporation and accepting the presidency thereof, he was present in the office, talked

with customers, made and indorsed checks and affixed his name to purported confirmation letters sent to customers and to market letters which were sent out presumably for the purpose of alluring prospective customers into the trap which had been prepared for them and, in addition to all of this, at times he took and kept part of the money which was paid in by customers on the transactions carried on with this establishment. The witness Erlich as her principal duty had charge of the books of the concern whereon were carried the ficti- tious and misleading accounts to which reference has been made and she also at times received the money which was paid in by customers and made out receipts therefor. She was not a novice in matters of this kind and appar- ently, after leaving this office, united with Livingston in organizing another similar business. Both of these people understood perfectly well for some time before the occurrence of the particular transactions under review in this case that the business which was being carried on and in the conduct of which they were taking part was of the unlawful character prohibited by the Penal Law.

The specific transactions upon which rests the convic- tion of appellant occurred with a man named Eibach. This man on two separate occasions attempted to pur- chase through Livingston & Company a small amount of stock and made payments on account of such attempted purchases. Livingston was present in the office when Eibach made his first payment and, as the jury could find, wrote him a letter pursuant to the general plan which has been outlined advising him of the purported purchase of the stocks. The money paid by Eibach on the second transaction apparently passed through Living- ston's hands and he kept part of it. The witness Erlich was present in the office when part of these transactions with Eibach took place and some of the money passed through her hands and she drew receipts for part of the payments and one of which at least represented that the

money was being received as a margin " for the purchase and sale of securities." Still later she made, in the books, the requisite fictitious and false entries to give the transactions an appearance of reality.

On such evidence as this it was error for the trial judge to rule as matter of law that these witnesses were not accomplices and to refuse even to submit to the jury the question of their status in that respect.

An accomplice is one who at common law might have been convicted either as a principal or as an accessory before the fact. (*People* v. *Swersky*, 216 N. Y. 471, 476.) A principal is defined as " A person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission," (Penal Law, sec. 2) and, in addition to that, the act under which defendant has been convicted provides that " Any person, * * * whether acting in his, * * * own right, or as the * * * servant, correspondent or representative of another who shall, assist in making " a contract such as we are considering is guilty of a felony.

I think that each of the two witnesses who have been named might be found to have assisted in making the specific contracts involved in this prosecution. In the court below it seems to have been held that there was a precise, completed agreement made between Eibach and the defendant for the purchase of the stocks in question and that thereby the contract was made and perfected, and that the acts done by each of these witnesses in connection with these transactions were subsequent to and detached from the making of the contract and that, therefore, neither witness was a party to it. I think that this view places too narrow an interpretation upon the words of the statute and excludes acts which were part of the making of the contract. Of course criminal statutes are to be construed strictly, but in interpreting the words of which they are composed we ought not to

adopt a meaning which will make them sterile and ineffective. There is no conclusive evidence of any contract by Eibach until he came into the office and ordered the stocks and paid his money for margins. In the case of one transaction this money passed into the hands of the witness Livingston, who kept part of it and who, presumably, signed letters confirmatory of both transactions. In one transaction the money passed through the hands of the witness Erlich and she made out receipts for it, and one of those receipts recited that this money was " to be used as margin in this account for the purchase and sale of securities," and in addition she entered the transactions upon the books of the company. We think a jury could find that these acts were so related to the transactions whereby these particular contracts were made that these witnesses, with their guilty knowledge of the crime which was being committed, assisted in committing it and were accomplices.

But beyond this there is another theory under which, in my opinion, the witnesses may be held to have been accomplices in respect of each transaction and in the commission of the crime then being accomplished. Possessing entire knowledge of its criminal purposes, a jury could say that each of these witnesses became, some time before the transactions in question, part of the organization whose purpose it was to fleece victims by bucket shop methods. Each one had an appointed place in the organization and in the operation of the machinery by which unsuspecting people were drawn into the trap and defrauded of their money. The part which each one understandingly played in this scheme has been sufficiently referred to. It is immaterial that somebody else possessed the " master mind " or that these witnesses were tools or agents or employees. A master mind is no protection to the tool who yields to it and engages in the commission of what he knows is a crime. The criminal

10

law does not recognize the rules of principal and agent as an exoneration of the latter from liability and the orders of a superior do not erect any protective bulwark between the employee or tool who engages in the commission of a felony and responsibility for the part which he plays no matter how subordinate it may be.

The criminal organization to which these witnesses became parties, as a jury might find, was unlimited in its scope and purpose. It was not created for the purpose of fleecing any particular person but for the purpose of defrauding any person who was innocent enough to come within the area of its operations. Doubtless these facts might have been utilized for the purpose of a prosecution under that subdivision of the section which has been referred to and which relates to the maintenance and operation of a bucket shop. But that was not the only effect which might be given to them. A jury in our opinion could find from these facts a conspiracy to which the witnesses were parties generally to strip any and all victims who might come along and for that purpose to make with any one of them a purported contract specified and forbidden in subdivision 1 under which this defendant has been convicted. If that view is correct these witnesses became parties to and were criminally responsible for any transaction within the scope of the conspiracy conducted by this organization or any member of it in carrying out its purposes. Under this reasoning they were parties to the particular transactions by which Eibach was fleeced and in which to some extent, as I have pointed out, they took part and as to which, within the rules already laid down, a jury could say that they became accomplices. If there were any doubt of the principles which we are applying to this case that doubt would be removed by a careful consideration of what was written by Judge CARDOZO in the *Swersky* case already referred to and where it was held in substance that a person who became a party to

a general arrangement and conspiracy of ice cream dealers to poison the horses of all obnoxious competitors was an accomplice in respect of a crime committed in pursuance of said conspiracy in poisoning the horses of a particular dealer, although he had no part in the commission of that crime and did not in fact know of it until after it was committed. In endeavoring to utilize that case as an authority for the proposition that these witnesses were not accomplices because of what was said in respect of an alleged accomplice named Levinson we think that the district attorney overlooked what was actually written and held. It was held that although this witness might have been a party to the conspiracy prior to the commission of the particular crime under consideration " he receded from the conspiracy " and the crime was committed without him. Recession may not be any atonement for crimes already perpetrated but it certainly is an escape from responsibility for those thereafter committed.

If the jury should find that the operations carried on by Livingston & Company embodied and amounted to a conspiracy such as I have outlined and the witnesses in question had become parties to it then, as matter of law, they were accomplices in respect of the transaction under review and the court should so have charged.

For these reasons we think that substantial error was committed by the trial court and that there must be a new trial.

McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., concurs in result; POUND, J., absent.

Judgments reversed, etc.