In the Matter of GARIBALDI M. LAPOLLA, on Behalf of Himself and Others Similarly Situated, Petitioner, against BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

Supreme Court, Special Term, New York County, May 17, 1949.

*Herbert A. Wolff, Jonas J. Shapiro* and *Herbert Feiler* for petitioner.

*John P. McGrath, Corporation Counsel* (*Michael A. Castaldi* and *Arthur H. Kahn* of counsel), for respondents.

*A. Mark Levien, amicus curiæ.*

EDER, J. Proceeding under article 78 of the Civil Practice Act. The petitioner is a licensed and appointed principal of an elementary school maintained by the respondent, Board of Education of the City of New York, and presently performing his duties as such. This proceeding is brought by him on behalf of himself and all other elementary school principals employed by said respondent, similarly situated.

This controversy involves a construction of article 63 of the Education Law, and in particular section 3101 thereof.

By chapter 778 of the Laws of 1947, the Legislature amended the Education Law in relation to teachers' salaries. It repealed article 33-B of the Education Law, as added by chapter 645

of the Laws of 1919, as amended, and a new article, to be known as article 33-B (now art. 63), was inserted in place thereof, being the statute now in concern. Chapter 778 became a law on April 11, 1947, effective July 1, 1947, and has been referred to as the "Feinberg Law." Old article 33-B of the Education Law was repealed.

Section 3101 (as added as § 882 by L. 1947, ch. 778, and as renumbered § 3101 by L. 1949, ch. 687, § 41) relates to uniform schedules of salaries for all teachers and sets forth the powers and duties of school authorities as to salaries, and so far as here relevant, provides:

"1. The school authorities of each school district of the state shall adopt bylaws fixing the salaries of all full-time members of the teaching and supervising staff, including if employed in such district, the superintendent of schools, associate, district or other superintendents, members of the board of examiners, directors, inspectors, supervisors, principals, administrative assistants, first assistants, teachers, lecturers and special instructors. Reference hereafter in this article to ' teachers ' shall include such employees and all other full-time members of the teaching and supervising staff except employees holding the positions enumerated in paragraph a of subdivision four of section eight hundred eighty-three of this article."

"4. In districts employing eight or more teachers the school authorities shall adopt bylaws establishing uniform schedules of salaries for all teachers. The salaries and salary increments fixed in the bylaws for such teachers shall not be less than those provided in section eight hundred eighty-three of this article."

Pursuant to said article 63, the respondent board of education has adopted by-laws establishing a uniform salary schedule for all classroom teachers under said respondent's jurisdiction, such schedule being applicable uniformly to classroom teachers in the elementary schools, junior high schools, vocational high schools and academic high schools, except only to the extent that some classroom teachers had, prior to the adoption of said article 63, already been receiving salaries in excess of the highest minimum salary required by said article 63 to be paid to such teachers. By reason thereof, the classroom teachers supervised by the elementary school principals employed by the board of education have a salary schedule uniform with the salary schedule of the classroom teachers supervised by principals of high schools maintained by the board, except only to the extent afore-mentioned.

It is alleged by petitioner, and admitted by the board, that assistant superintendents of schools under its jurisdiction, in pursuance of its by-laws, are assigned, among other duties, to supervise groups of schools and by virtue of such assignments some assistant superintendents of schools supervise a group consisting of elementary schools only, and other assistant superintendents of schools supervise a group consisting of high schools only; that the board has adopted a uniform salary schedule applicable to all assistant superintendents of schools under its jurisdiction, and such schedule is applicable uniformly to such assistant superintendents without distinction as to the grade or type of schools constituting the school group supervised by such assistant superintendents, and by reason thereof assistant superintendents who supervise the elementary school principals employed by the board have salary schedules uniform with the salary schedules of the assistant superintendents who supervise the principals of high schools maintained by the board.

Petitioner further alleges, and it is not denied, that the board, pursuant to said article 63, has adopted by-laws establishing uniform salary schedules for positions in the clerical service, under its jurisdiction, without distinction as to the type or grade of school in which such positions are filled.

The current by-laws of the board, however, contain separate salary schedules for principals of elementary schools and principals of high schools.

Petitioner contends that the by-laws, by reason of the lack of uniformity of the salary schedules applicable to school principals therein contained, are illegal and are in violation of said section 3101 of the Education Law.

On or about November 15, 1948, there was served on the board, on behalf of petitioner and others similarly situated, a written demand that the board forthwith adopt a by-law effective as of the date required by law, establishing salary schedules uniform for all school principals, and file such by-law with the State Commissioner of Education. The board has failed and refused to comply with said demand, and this proceeding results.

By this proceeding petitioner seeks an order compelling and directing the board to forthwith adopt a by-law or by-laws containing a salary schedule or schedules uniform for all principals duly licensed and appointed as such under the jurisdiction of the board, and to file a certified copy thereof within thirty days from the adoption thereof with the State Commissioner of

Education, and for such other and further relief as to the court may seem just and proper.

As I apprehend it, it is the contention of the board, in brief, that it was the intention of the Legislature, in enacting chapter 778 of the Laws of 1947, to mandate the payment of higher minimum salaries to classroom teachers only, and that this legislation was not intended to be applicable to principals.

In support of this position, the board directs attention to conditions existing anterior to the enactment of this law. It sets forth that for several years prior to July 1, 1947, the board as well as other boards of education in this State found it difficult to attract new classroom teachers to the school system, and to keep on its staff many of its experienced classroom teachers, for the reason that the salaries paid to classroom teachers were relatively low and not commensurate with their training and education. This is unquestioned. The board also alleges, and there appears to be no proof to the contrary, that at no time has the board of education been confronted with the problem of a shortage of qualified supervisors or principals.

It is emphasized that it was recognized that salaries that could be earned outside of the school system by persons of similar training and education were more attractive, and that this was a condition which the Legislature sought to meet and that it was the factor to increase the salary of classroom teachers which influenced the Legislature to enact this law.

In this connection attention is solicited to the report on permanent teachers' salaries of the Governor's Committee on State Educational Program, dated February 27, 1947, the Governor's message to the Legislature dated March 3, 1947, and the Governor's memorandum upon the signing of the bill which became chapter 778 of the Laws of 1947.

In its report (N. Y. Legis. Doc., 1947, No. 39) the Governor's committee stressed the need of attracting and keeping classroom teachers by increasing the salaries and recommended that the principle of a single salary schedule be adopted.

In his message to the Legislature the Governor transmitted to the Legislature the report of the committee, and urged that its recommendations be enacted into law, and stated the purpose of the proposed law would be to pay higher minimum salaries to school teachers so that better teachers would be attracted and kept in the school systems of the State, and in signing the bill he wrote a memorandum in which he made repeated reference to the benefits that were being conferred upon classroom teachers.

Throughout these documents runs the emphasis on the need to properly compensate the classroom teachers and the basic need of obtaining and keeping in the school systems of the State good teachers in the elementary schools.

It seems clear to me from each of these documents, and from a consideration of the situation with respect to the imperative need for classroom teachers, that the object sought to be attained by this legislation was to increase the salaries of classroom teachers and to provide for the single salary schedule for classroom teachers, and that there was no intention that the single salary schedule was to be extended to principals or to other members of the teaching and supervisory staffs.

There existed an obvious paucity of classroom teachers, particularly in the elementary schools (see committee's report, subd. B, p. 12), and to which reference is made in the Governor's memorandum, viz., '' The shortage of elementary teachers is critical and this measure should do much to bring it to an end.'' In another part of his memorandum he says: '' For the first time in this State, this bill will establish a single salary schedule whereby elementary teachers of equal qualifications are paid the same as high school teachers.''

It is not claimed or shown by petitioner that there existed a dearth of qualified supervisors or principals. There existed a critical scarcity of teachers. Nowhere in the mentioned documents is there any indication that the single salary schedule was to be extended to principals.

The petitioner stands on the literal language of the law requiring the school authorities to adopt by-laws establishing uniform schedules of salaries for all '' teachers '', and contends that as defined in section 3101 of the Education Law, for the purposes of article 63, '' principals '' are included in the term '' teachers '', and argues that '' 'Principals ' having been used in the statute in the same breath as classroom teachers, there is no room for treating the one group differently from the other under the same statute '', and so it is maintained that the conclusion is inescapable that the Legislature in abolishing salary distinctions based on grade or type of school, did so for principals as well as for classroom teachers. Therefore it is finally asserted that this statute requires salaries to be uniform for all full-time principals.

The basic consideration of the courts is to ascertain and give effect to the true intention of the Legislature; legislative intent is the objective of all statutory construction, and in the search for legislative intent the court will go straight to the purpose of the bill.

Thus it is held that adherence to the letter of the statute will not be permitted to defeat the general purpose and manifest policy intended to be promoted (*Surace* v. *Danna,* 248 N. Y. 18, 21), and that the court, in construing a statute, is not necessarily bound by literal language of a statute if it conflicts with the Legislature's manifest intent (*Matter of McDonald,* 225 App. Div. 403, 405). The occasion of the enactment and the policy which dictated it is to be considered (*Matter of Bowne* v. *Bowne Co.,* 221 N. Y. 28).

" The intent of the legislature is to be collected from the language of the statute, applied to the subject-matter, and in view of public and notorious facts existing when the statute was enacted." (*Brown* v. *Mayor of City of N. Y.,* 63 N. Y. 239, 244.)

The real purpose of construction is the intent of the Legislature, and to this end the courts will indulge in a departure from literal construction and will sustain the intention although it be contrary to the literal letter of the statute, for a thing, within the letter of the statute, is not within the statute if it is not within the intention of the lawmakers (*Matter of Carns* [*Ralph*], 181 Misc. 1047, 1055).

To assert, as petitioner does, that " 'Principals ' having been used in the statute in the same breath as classroom teachers, there is no room for treating the one group differently from the other under the same statute," carries no connection.

It is set forth as a rule of statutory construction that a phrase used in a statute must be read in the light of the origin and history of the statute, for a phrase standing and considered alone may import a meaning entirely at variance with the true legislative intent and the object of the enactment (*Matter of Carns* [*Ralph*], *supra,* pp. 1054–1055).

Taking all the elements and features into consideration, to which I have alluded, I am convinced that the Legislature, by the enactment of the statute in question, established and intended to establish minimum salaries for classroom teachers only, and to provide for the single salary schedule for classroom teachers, and that it was not the legislative intent that the single salary schedule was to be extended to principals or to other members of the teaching and supervisory staffs.

For the foregoing reasons the application is denied, and the petition is dismissed.

Settle order.