Henry Epstein, J.
This is an application pursuant to article 78 of the Civil Practice Act wherein the petitioners seek to compel the respondents and intervenor-respondent to include them in the resolution providing for 1 ‘ pensions-f or-increased-take-home ” benefits.
*1054 Petitioners urge that respondents provided such benefits for other civil .service employees of various agencies and departments of the City of New York; that intervenor-respondent provided such benefits to 5,397 employees of its Authority and excluded petitioners and others in their class of employees; that petitioners are civil service employees and as such are entitled to the same rights and benefits as other civil service employees employed by the intervenor-respondent and as members of the New York City Employees’ Retirement System are entitled to pay only equal shares therein; that the acts of respondents and intervenor-respondent are arbitrary, capricious and discriminatory against petitioners and those -similarly situated.
No issue of fact is submitted. The petitioners do not attack the validity of the statute as a whole or the other various steps to put it in operation except that part which denied them the benefits granted to others and which they claim they are also entitled to.
Petitioners are hourly-rated employees whose salary including fringe benefits is paid wholly from the operating funds of the Authority, which funds are derived primarily from passengers.
The purpose of the statute providing for “ pension-for-increased-take-home-pay ’ ’ plan was an indirect means of providing an immediate increase in take-home pay in lieu of a general salary increase. The employer undertook to pay 2%% of the obligation of the employee, in a manner provided under the statute, thereby releasing approximately 3%% of the employee’s pay to his take-home pay, if he so desired.
This method no doubt requires some employees to pay unequal shares into the employees’ retirement funds and deprives those employees not receiving such benefits of additional take-home pay. However, as stated in Matter of Gianastasio v. Kaplan, 142 Misc. 611, 615, affd. 257 N. Y. 531, appeal dismissed 284 U. S. 595): “ Not all discrimination is prohibited by the guaranties of equal protection of the law or that against abridgement of privileges of citizens. The test to be applied is whether the discrimination is arbitrary or unreasonable or whether it is based on some ground which may have appeared to the Legislature as having some relation to the subject of the legislation * * *; some basis which may have appealed to the Legislature of the State as having .some relation to the advancement of the public welfare.”
In Matter of Gaston v. Taylor (274 N. Y. 359, 364) the court said: ‘ ‘ The wages of public employees are fixed in manner defined by law and when fixed become matters of public record. The law at times gives to an officer or board of the city plenary *1055 power to fix the salary or wages to he paid to city employees; at other times it places restrictions upon that power. One of these restrictions- is that the city must pay to certain laborers the prevailing rate of wages. No officer or board can nullify that obligation by fixing wages at a lesser amount ’ ’.
In Matter of Dinan v. Patterson (193 Misc. 92, affd. 275 App. Div. 801) it was held that the city could withhold a basic cost of living increase to those employees coming within the prevailing wage coverage of the Labor Law. To what was said in Matter of Gaston v. Taylor (supra) may be added another class of employees, viz., those coming within a collective bargaining agreement.
The intervenor-respondent Authority has upwards of 35,000 employees, divided into four groups, each receiving different treatment in such matters as wages, working conditions, leave of absence, fringe benefits, etc.
The largest group of the Authority employees, approximately 28,882, are hourly-paid and are engaged in the actual operation of the transit facilities. They are classified by the Civil Service Commission in Group I of the Rapid Transit Railroad Service. The petitioners are in this category. A second group consists of approximately 2,454 annually-paid supervisory employees, who are Group H of the Rapid Transit Railroad Service.
The third group of approximately 2,934 are annually paid employees in various civil service classifications, performing administrative, clerical, medical, legal and engineering functions. Their titles are usually in city-wide civil service use and most of them are included within the city’s career and salary plan. Thus, as far as salaries, increments, leave of absences, fringe benefits, etc., the clerks and other administrative employees of the Authority are on substantially the same basis as those performing similar functions throughout the city service.
A fourth group would he those- entitled to prevailing rates under section 220 of the Labor Law.
The hourly-rated and annually paid supervisory employees, as separate groups, arrange their respective rates of pay by means of collective bargaining.
The right of the Authority and the purpose of entering into collective bargaining is succinctly covered in the case of Civil Service Forum v. New York City Tr. Auth. (4 A D 2d 117, affd. 4 N Y 2d 866).
Suffice it to say that any change in the contract during the fixed period of its coverage would upset the prime purpose to secure stability of operation and fixed operating costs in the transit system for the definite period of time agreed upon.
*1056 The civil service employees under these collective bargaining-agreements receive many benefits not accorded to many other civil service employees, including overtime and premium pay, and medical and surgical care without costs. Without a doubt, some of the benefits granted to one class of employees offset different benefits granted to other classes.
Each individual employee cannot single out and claim the right to each specific benefit granted. Nor may he refuse any obligation of employment merely because other employees are not faced with similar ones. The public authorities cover too many divergent responsibilities to require each employee or class of employees to be placed on the same footing and treated indiscriminately.
As long as there is a rational and reasonable basis for a difference between classes of employees in .such respect as type of work, manner of payment, working conditions, fringe benefits, etc., there is no illegal discrimination (Matter of Gianatasio v. Kaplan, supra). In the instant case, the employees excluded from the plan have an outstanding collective bargaining contract which extends to December 31, 1961. Such employees will continue to pay towards the retirement benefits and receive any benefits to which they may be entitled without change or diminution. I find no violation of rights of said employees.
As to the specific instance of other employees within the Transit Authority receiving benefits under the new 1 ‘ pension-for-increased-take-home-pay ” plan, the supervisory group agreed to such plan pursuant to its respective collective bargaining agreement. The petitioners, without question, will have their opportunity to bargain for such fringe benefit when the present agreement comes up for renewal. The other employees were granted such benefits under the power of the Authority to fix the salaries of its employees, including the contribution made on their behalf to the New York City Employees’ Retirement System (Public Authorities Law, art. 5, tit. 9, § 1204, subd. 6).
Said other employees have no collective bargaining rights, nor do they receive the many benefits granted thereunder. They are generally granted the benefits similarly granted to other civil service employees in general.
. Accordingly, I find that the acts of intervenor-respondent and the respondents are not arbitrary, or capricious, and the petitioners have not been illegally discriminated against; the application is without merit and is denied and the petition is dismissed.