Raymond L. Wilkes, J.
The law commands that we always “ look to the essence of a thing, whether it be a point of doctrine, of practice, or of interpretation.” We see this pentimento with what borders on transparent clarity when we apply the solvent of reason to this application. The point is best made by the following excerpt from a recent opinion of the Honorable Hugh R. Jones, Judge of our Court of Appeals, in People v. Brooks (34 N Y 2d 475, 478) decided July 10, 1974, wherein he said: “ 1 There is no surer way to misread any document than to read it literally ’ (Guiseppi v. Walling, 144 F. 2d 608, 624); and ‘ [o]f course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, o,r anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or- object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning. ’ (Cabell v. Markham, 148 F. 2d 737, 739.) ‘ This question cannot be answered by closing our eyes to everything except the naked words of the [statute]. The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification.'’ (Mr. Justice Frankfurter dissenting in United States v. Monia, 317 U. S. 424, 431.) ” (Emphasis supplied.)
The defendant’s present pro se application contends that the sentence heretofore imposed upon him is illegal and must be set aside pursuant to CPL 440.20 i(subd. 1). He was sentenced by this court on November 14, 1972 to an indeterminate term of seven years “to be served concurrently with the present three year concurrent terms of fifteen, ten and five years, respectively, that you are now serving in the Federal penitentiary pursuant to the sentences heretofore imposed upon you by Judge Rosling in the Eastern District Federal Court of New York on June 28, 1972.”
The defendant now urges that he be resentenced to a conditional or an unconditional discharge in order that the same effect as a concurrent sentence be achieved. If not, he argues, ‘ ‘ the good spirits in which I agreed to plead guilty and in which you agreed to sentence me, ’ ’ would be violated. He writes, “Had I known that the State sentence, even concurrent though *38 it is, would bring with it all these problems, I would never have plead [sic] guilty to the charges.”
The defendant’s concurrent sentence was imposed pursuant to section 70.25 of the Penal Law which reads in part: ££ when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and the undischarged term or terms in such manner as the court directs at the time of sentence. If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run as follows:
“ (a) An indeterminate 'Sentence shall run concurrently with all other .terms. ’ ’
Of1 itself, the foregoing section of the Penal Law places no constraint upon concurrent sentencing where a person has been previously sentenced and is serving a term imposed by a court not of this State. However, subdivision 1 of section 70.30 of the Penal Law reads in part that: £ £ An indeterminate sentence of imprisonment commences when the prisoner is received in an institution under the jurisdiction of the state department of correction ”, and it is upon such shoals that concurrent sentences in this State have now begun to founder.
Sections 70.25 .and 70.30 obviously are devoid of reference to defendants who are incarcerated pursuant to sentences imposed by courts' of other jurisdictions. In the event such persons were not subject to the long-since-customary concurrent sentences meted out to them, this defendant’s sentence wodld, of course, be improper. Indeed, in a literal sense, his sentence could not commence until his release from Federal prison and his arrival at1 ‘ an institution under 'the jurisdiction of the state department of correction.” (GPL 70.30, subd. 1.) As a matter of fact, if this court had been prohibited from imposing a sentence concurrent with the defendant’s Federal imprisonment, it would have had no realistically viable alternative other than to impose a consecutive sentence of up to a possible maximum of seven years .as indicated on page 8 of the sentencing minutes.
For quite some time, the courts of this State have been interpreting the law on this subject somewhat vacuously, and the New York State Department of Correctional .Services has until fairly recently been honoring their ££ concurrent ” dispositions. However, the arrival upon the scene of a new commissioner and *39 counsel has changed all that — old customs curtsy before great kings.
This court takes judicial notice of the fact that the County Court of Nassau County has been sentencing Federal prisoners to State terms to be served concurrently with their Federal sentences ever since the Penal Law took effect in its present form in 1967. It is no top secret that many ¡defendants over the years have been permitted .to rely upon such disposition of their eases when deciding whether or not to co-operate with the prosecution, and penology-wise, concurrent sentences have generally been considered to be one of the fairest methods of disposing of many cases without the retributive need for consecutivity so frowned upon by our appellate jurists and penologists alike. Conditional or unconditional discharges pursuant to article 65 of the Penal Law are most unpalatable substitutes for concurrent sentences — they make Judges unnecessarily vulnerable (particularly in a day and age when they are fair or for that matter foul game for all and sundry) —and in addition, they fail to fulfill the functions of concurrent sentences. To belabor the obvious, if New York State courts gave such discharges to prisoners serving Federal terms, those prisoners would go free if their Federal convictions were overturned, whereas with concurrent sentences hanging over them, so to speak, if a Federal sentence were overturned for any reason, the State sentence would still take full force and effect.
In this regard, we wish to call attention to the following colloquy which ensued on March 13, 1973 between my learned colleague, the Hon. Bernard Tomson, and Harold Schatz at the time of that defendant’s change of plea. During the course of plea taking, Judge Tomson spelled out his reliance upon a Department of Correctional ¡Services’ memorandum which led to the imposition of that defendant’s sentence concurrent with his then extant Federal sentence. In his customarily thorough and incisive style, Judge Tomson painstakingly explained to the defendant the practical meaning of the sentence he was planning to impose:
the court: Have any promises been made to yon as to sentence or punishment by the Court, the District Attorney, any Assistant District Attorney or your own attorney, other than the fact that you were told, and I am telling you now, that the sentence I intend to impose here is an indeterminate term of five years in the state institution, to run concurrently with your present sentence, your present federal sentence, which I understand is ten years? (Emphasis supplied.)
the defendant: Yes, sir.
the court: Now, do you understand the implications of that?
*40 That would mean that if for some reason or other you were not required to serve the sentence in the Federal Court in excess of five years, or rather that if for some reason or other you served less than five years in the federal sentence, you would still be required to serve a term in a state penal institution. The length of the term that you would be required to serve in a state penal institution would depend on a number of factors, which I do not think I can go into at this point other than to tell you that if you serve — I gather •from this memorandum that I have with respect to what the Department lof* Correction is doing, that if you, serve five years or more in the federal penitentiary there is no problem about the state sentence. You would not serve any portion of it. But if you serve less than five years, then you would have to deal with the State Department of Correction. Do you understand that? (Emphasis supplied.)
the defendant : If the federal government were to parole me after three and one half years would I then have to go to do the time, the balance of the time at stake? ' ■ , ;
the court : 1 will read the memorandum that I have here. The Department of Correction is honoring sentences to be served concurrently with previously imposed and presently being served federal sentences. (Emphasis supplied.)
Listen closely. It is more important that you hear what I say.
mb. castellano : Than what I say, sir.
the court: You can have all the time you wish to discuss it with your lawyer after I read this.
A discussion with Manuel Mwrviw, Esq., chief counsel of the Department of Correction has revealed that there are Judges in New, York County who', are sentencing defendants to terms to run concurrent with federal sentences. The defendant receives credit as good time on the state sentence for the time he serves in federal prison on the federal sentence. (Emphasis supplied.)
And then there is this example given. Prior federal, zero to five. State is zero to four.
That is not unlike this. All you have to do is substitute zero to ten and zero to five.
The individual serves four or more years •— This is on the zero to five situation. — in federal prison and then is released on parole or released at the end of the term or for good behavior. He is free and clear on the state sentence.
That is five years. He served five years. It is more than the four. He is out. Individual serves three years in the federal prison — That is what you are getting at — then is released on parole. State authorities must pick him up because Penal Law 70.00, sub 3 requires that the defendant serve a minimum of one year on an indeterminate term.
He would serve one year in a state prison. This will always occur when you have served less than the maximum of the State Court sentence. So if you serve less than five you will serve one year in the state. (Emphasis supplied.) the court: I think in fairness to you too, 1 should state that if for some reason what I described as the situation insofar as concurrent sentences are •concerned would vary in any significant way from what I described to you, I would then entertain an application to resentence. What I am getting át is this: If for some reason or other the policy considerations which permit the concurrent sentences were changed so that you served five years in a federal prison and then they want you to serve an additional time after the five years in a state institution, I would then entertain an application to resentence. Do you understand?
So that you would not be required to serve any additional time in New York State. To put it another way, I will carry out this end of the bargain. The *41 bargain is quite clear and that is that I am going to sentence you to an indeterminate |term of five years and that indeterminate term of five years will run concurrently with the federal sentence. Your obligation to the society insofar as this court is concerned will terminate once you have served five years, either in a federal penitentiary or in a state institution. I think that is the clearest The bargain being what I stated it to be. (Emphasis supplied.)
If for some reason or other, if for any reason — and I cannot conceive of any at this point unless they change the rules — if that doesn’t work out I will then entertain an application to resentence, so as to carry out this end of the bargain. The bargain being what I stated it to be.” (Emphasis supplied.)
The comparatively even tenor of our concurrent ways was, to say the least, .somewhat ruffled thereafter hy an unreported decision of the County Court of Wyoming County dated December 31, 1973 (Judge Julian E. Henley) entitled People ex rel. Altro v. Smith, which held, in the most properly literal interpretation of our statute as one might come upon, that State sentences concurrent with Federal sentences could not commence until a 1 ‘ prisoner is received in an institution under the jurisdiction of the state department of correction ” according to section 70.30 of the Penal Law. In the vernacular, concurrency with Federal sentences was undone! Our Department of Correctional Services thereupon adopted thi:s holding as dogma.
But, as if that were not enough, of more recent times, and in keeping with People ex rel. Altro v. Smith (supra) and the Correctional Department’s new policy, Judge Tomson’s sentence in People v. Schats was remitted by the Appellate Division, Second Department, for resentence. (See People v. Schatz, 45 A D 2d 853.) Ordinarily, such a determination by the Appellate Division of this Department would conclude this inquiry at this point without so much as a further 'syllable, but careful examination of the appellate briefs in People v. Schats clearly establishes that .considerations of (1) constitutionality and (2) of the legislative purposes underlying the applicable sentencing statutes were by no means fully explored for the courts hy contending counsel. With all due respect, this court will now try to draw attention to these questions and seek to evaluate them.
During its 1974 session, the New York State Legislature passed an act to amend the Penal Law in relation to concurrent and consecutive terms of imprisonment which was intended to fill a void' in our present statute. A new subdivision was to be added to section 70.25 (Assembly Bill No. 9260-A) reading: “4. When a person, who is subject to any undischarged term of imprisonment imposed at a previous time by a court of another jurisdiction, is sentenced to an additional term of *42 imprisonment by a court of this state, the sentence or sentences imposed by the court of ¡this state, subject to subdivisions one, two and three of this- section, shall run either concurrently or consecutively with respect to such undischarged term or terms in such manner as the court directs at the time of sentence. If the court of this state does not specify the manner in which a sentence imposed by it is to run, the sentence or sentences shall run consecutively.” (Emphasis supplied.) Governor Malcolm Wilson recognized that “ the authority to impose .such a concurrent sentence may be necessary in a particular case * * * in order to afford a sentencing court the ¡opportunity to make the fairest disposition possible in that case. Those most familiar with our criminal justice system, jurists and penologists alike, agree that the courts1 should have this added flexibility in sentencing.” (Governor’s Memorandum, June 15, 1974, No. 214.) Most unfortunately, however, .at the behest of the Department of Correctional Services, Governor Malcolm- Wilson vetoed this amendment to the Penal Law because: “it fails to make necessary conforming amendments to provisions in the Penal Law relating to the calculation of terms of imprisonment. Such conforming amendments are needed to provide clear guidelines to !the Department of Correctional Services in regard to tihe \calculatipn of New York sentences which would be served 'in foreign jurisdictions ”. (Emphasis ¡supplied.)
Unforunately, this .so sorely needed ¡legislation is now to be subjected to the battering winds of a most .uncertain fate before a soon-to-be-elected new Legislature, and -its ¡resuscitation is, to say the least, now somewhat uncertain. But be that is it may, it is clear to this court that to declare illegal concurrent ¡sentences such ¡as the one at bar, raises the -'serious spectre of substantial issues of denial of equal protection under the Fourteenth Amendment of the ¡United ¡States ¡Constitution, .and .serves to frustrate the legislative purpose underlying concurrent sentencing.
.Statutes, whenever possible, should read in a manner calculated not to violate constitutional principles. (People v. Bailey, 21 N Y 2d 588; Matter of Marcellus v. Kern, 170 Misc. 281.) They should, whenever possible, be construed to avoid the conclusion that they are unconstitutional and any doubts with respect ¡thereto should be alleviated. (People v. Lo Cicero, 14 N Y 2d 374.) Indeed, courts will even avoid literal interpretations of the words of a statute which would be likely to result in unconstitutionality. (Matter of Barry Equity Corp., 276 App. Div. 685.) And, ¡adherence to the letter of a statute *43 should not be permitted to defeat the general purpose and manifest policy intended when the statute was enacted. (Matter of Lapolla v. Board of Educ. of City of N. Y., 195 Misc. 651, affd. 275 App. Div. 1038, affd. 301 N. Y. 580.) Particularly, inconsistencies and results not within the contemplation of the Legislature should be avoided. (State of New York v. Garlick Parkside Mem. Chapels, 55 Misc 2d 797, affd. 30 A D 2d 143.)
It is by now well settled — to the point of being virtually axiomatic — that when embarking upon the construction of a statute, the intent of the Legislature, as well as the purpose of the law, is to be looked for. (People ex rel. Killeen v. Angle, 109 N. Y. 564.) ‘ ‘ Our duty is to ¡search out the intention of the Legislature and to give effect to it when discovered though the expression be imperfect.” (103 Park Ave. Co. v. Exchange Buffet Corp., 242 N. Y. 366, 374 [Cardozo, J.]; emphasis supplied.) In addition, the design of 'the Legislature must be given effect though such a construction seems contrary to the letter of the statute. (See Allen v. Stevens, 161 N. Y. 122, 145.) See People ex rel. Jackson v. Potter (47 N. Y. 375, 379) wherein Judge Folger speaking for a unanimous court said: “ The intent of the law-maker is to be sought for. When it is discovered, it is to prevail over the literal meaning of the words of any part of the law. And this intent is to be discovered, not alone by considering the words of any part, but by ascertaining the general purpose of the whole, and by considering the evil which existed calling for the new enactment, and the remedy which was sought to be applied. And when the intent of the whole is discovered, no part is to be so construed as that the general purpose shall be thwarted, but all is to be made to conform to reason and good' discretion. And the same rules apply to ¡the ¡construction of a Constitution as to that of a statute law.” (Emphasis supplied.)
The need for “ conforming amendments” as successfully urged upon the Governor prior to his veto by the Department of Correctional Services should, in this instance, not be permitted to thwart the legislative purpose.
Although penal statutes generally are, of course, to be strictly construed against those who seek to invoke them, nevertheless, where they are remedial in nature and enacted for the public good, they should be equitably construed in order not to defeat their general as well as specific purpose. (See Cotheal v. Brouwer, 5 N. Y. 562, 567; People v. Bartow, 6 Cow. 290, 291, 293; People v. Abraham, 16 App. Div. 58, 61.) Yor should they be construed so as to render them sterile or ineffective. (People *44 v. Grossman, 241 N.Y. 138, 145.) See reference to the foregoing in People v. Minowitz (13 N. Y. S. 2d 937, 939, 940.)
Since in the instant case the statutes in question say nothing about the treatment of Federal prisoners by our State courts, this leaves the courts free to interpret the statutes in the light of the ¡appropriate legislative purpose as well as constitutional principles.
Bather simply put, this court reads the applicable statutes as leaving a lacuna in the law which the courts may properly fill through their inherent authority by discretionary concurrent sentencing without the need to wait for “ conforming amendments.”
Prisoners ¡serving indeterminate sentences in State prisons may be ¡sentenced to a concurrent term if later convicted in a Federal court. (U. S. Code, tit. 18, §§ 3568, 4082, subd. b; see Hash v. Henderson, 262 F. Supp. 1016, affd. 385 F. 2d 475.) The same prisoners will usually be sentenced to a concurrent term if convicted and given an indeterminate sentence by a New York ¡State court. (Penal Law, § 70.25, subd. 1, par. [a].) Prisoners serving sentences in Federal prisons may be sentenced to a concurrent term if later convicted in a Federal court. (U. S. Code, tit. 18, § 3568.) To declare this defendant’s sentence illegal would be tantamount to a holding that prisoners serving sentences in Federal prisons may not be sentenced to terms to run concurrently with their sentences in a State court. If that were true, such prisoners would not be receiving equal treatment, and such instances must be circumspectly scrutinized pursuant to the principles of equal protection.
If prisoners in ¡Federal prisons subject to State sentencing are to be a separate class for equal protection purposes, a rational relationship to a reasonable government purpose must be found and demonstrated. “ The test to be applied is whether the discrimination is arbitrary or unreasonable or whether it is based on some ground which may have appeared to the Legislature as having .some relation to the subject of the legislation ” and “to the advancement of the public welfare.” (Matter of Gianatasio v. Kaplan (142 Misc. 611, 615, affd. 257 N. Y. 531; quoted in Matter of Neil v. Wagner, 27 Misc 2d 1053, 1054.) ‘1 The Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have ‘ some 'relevance to the purpose for which the classification is made. ’ ” (Rinaldi v. Yeager 384 U. S. 305, 309.) In Rinaldi (supra) classifications based on “ administrative convenience ” comparable to the ‘ ‘ conforming .amendments ’ ’ requested by the *45 Department of ■Correctional Services in the pursuit of the fiscal objectives of a reimbursement statute, were found to violate equal protection rights. To .reiterate, any classification of persons for the purpose of the statute would have to be related to the goals of the statute. Thus, ‘1 a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures.” (Rinaldi, supra, p. 309.) But, it could not demand reimbursement from only one segment of the beneficiaries, those most easily reached. All those who are implicated by the purposes of a statute must ,be accorded equal treatment.
In Baxstrom v. Herold (383 U. S. 107) a New York procedure for civil commitment following criminal commitment was held to be a denial of equal protection. The policy behind civil commitment is that commitment of persons who are determined to be mentally ill will promote the health and safety of such persons and of the public at large. Even though the New York procedures served a purpose, namely “ administrative convenience ”, it had to serve the purpose of the civil commitment statute and no other, in order to successfully withstand equal protection scrutiny. 'Classification of those who have been in criminal commitment as 1 ‘ dangerously insane ” “ may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill at all.'n (Id. p. 111.) Such a showing would be at the foundation of the policy behind civil commitment. Therefore, one who has been in criminal commitment must be accorded the same procedures as others who are subject to civil commitment proceedings on the question of whether or not they should be committed. The rationale underlying any classification must be based upon the purposes for which the practice of concurrent sentencing has been developed.
The policy behind concurrent sentencing in .the State system is that “ consecutive sentences ought to be the result of deliberate action and not inadvertence or rote.” (Penal Law, § 70.25, Commission Staff Notes.) “ When the court is aware of the prior sentence and does not feel strongly enough about the case to specify the manner in which the sentences are to run, the sentences should run concurrently.” (Id.) The only situation in which consecutive sentences are presumed in the absence of specification is when there is some danger that a court may not be aware of prior sentences. (Id.) In the instant .situation, the very fact that a Federal prisoner can be before a State court *46 only by detainer warrant serves notice of a prior sentence. (GPL 580.20, 580.30; IT. S. Code, tit. 18, § 4085.) Further, the purpose of the presumption of consecutive sentences where it exists is only to place a “ burden upon the defendant to draw the court’s attention to other sentences and request a specification with respect to the present sentence.” (Penal Law, § 70.25, Commission Staff Notes.) The manifest intention is to permit concurrent sentences in every case. To deny the courts of this State the right to impose concurrent sentences upon Federal prisoners runs directly contra to the rationale and policy of section 70.25 of the Penal Law. Even if other reasons are adduced for such a denial, they simply do not withstand equal protection scrutiny. The reference ito courts of this State in subdivision 1 of section 70.25 of the Penal Law should not be read to exclude the lawful imposition of concurrent sentences upon Federal prisoners.
The Commission Staff Notes to subdivision 1 of section 70.25 of the Penal Law further state: 1 ‘ Rules that require consecutive sentences can only be justified on the ground of arbitrary .retribution. There is no sound reason why the decision ,as to whether a sentence imposed by the court is .to run concurrently or consecutively cannot be left to the discretion of the court. * * * Two New York ¡Supreme Court justices have considered the problem of whether a New York Court can make a sentence to a state prison run concurrently with a federal sentence and have concluded — without finding it necessary to hold — that this is possible. People ex rel. Winelander v. Ruthazer, 17 Misc 2d 720, 183 N. Y. S. 2d 765 (S. Ct. Queens Co. 1959); People ex rel. Bove v. McDonnell, 128 N. Y. S. 2d 643, 649 (S. Ct. Bronx Co. 1953).”
There is no manifest intent in the Penal Law calculated to deprive Federal prisoners of the opportunity to be ¡sentenced by .State courts to terms concurrent with their Federal terms. In subdivision 1 of section 70.20 of the Penal Law, commitment to the custody of the State Department of Correctional Services is required, as opposed to commitment to a county or regional correctional institution under subdivision 2 of section 70.20. There is no reference to situations in which the prisoner’s original place of imprisonment is outside the State. Likewise, in subdivision 1 of section 70.30 commencement of an indeterminate term occurs upon .arrival at a State institution, as opposed to commitment of a definite term upon arrival at a named local institution under ¡subdivision 2 of section 70.30 of the Penal Law. Cases on the point distinguish State facilities from local *47 facilities. (People ex rel. Jackson v. Weaver, 279 App. Div. 88; Matter of Jcmosko v. Kross, 27 Misc 2d 210.) Our statute is devoid of direction with regard to the 'commencement of terms not to be served in the State system. Clearly, insistence upon arrival and custody .at State institutions in .subdivision 1 of section 70.20 and subdivision 1 of section 70.30 is grounded upon an intent to allocate responsibilities within the State system without reference to possible allocations of authority to other jurisdictions. Accordingly, the foregoing sections of1 the Penal Law should not be read to exclude service of a concurrent State sentence at a Federal institution.
This court sees no difficulty in the assimilation of Federal practice and sentencing procedures into the practice of New York State Judges pertaining to concurrent sentencing, despite the absence of explicit guidelines. ,CPLR 4511 provides for a complement to the State system, charging State Judges with judicial notice of Federal laws and regulations. There should be no danger that Federal prisoners might receive treatment different from State prisoners subject to concurrent sentences.
Most recently, the Appellate Division, First Department, in People v. Duffy (43 A D 2d 937), is aid: “Judgment, Supreme Court, New York County, rendered on April 27, 1972, unanimously modified, in the interest of justice, so that the sentences imposed run concurrently with the sentences of the .Superior Court of California, Los Angeles, and reduced to time served. The defendant-appellant has now been incarcerated for nearly five years for .crimes which essentially are larcenous in nature, and not involving violence. For reasons not altogether clear, although he was indicted in 1967, he was not finally sentenced until 1972. Meanwhile, he had been also sentenced to 14 years, indeterminately, in California, for another crime. The judge who sentenced him at that time said: ‘ Because Mr. Duffy had cooperated with the local authorities in matters pending in California courts and because he had cooperated with and at the request of the Secret Service and Treasury people >in supplying information, as to counterfeiters, I told Mr. Duffy that if he was sentenced in New York I was to be notified and I would have his California ¡sentence run concurrent with any New York sentence. ’ And it now appears the defendant will be eligible for parole in California in May of 1974. iWe can perceive no reason for bringing defendant back to New York again for a resentencing, and resentencing was clearly the expectations of Mr. Justice Schweitzer and Mr. Justice Postel, who presided over the pleas and sentences in New York. Assuming the Calif ornia authorities *48 find defendant worthy of parole in May of 1974, it is our view he will have then sufficiently expiated his offenses and should ■at that time he released. Accordingly, we modify the sentence to time served with the anticipation that if the California correctional authorities find him rehabilitated and release him, their decision will be acceptable to this court. And to this disposition, we note 'the District Attorney of New York County offers no objection. Concur — MoGtvern, P. J., Markewich, Steuer, Capozzoli and Lane, JJ.”
This court interprets the applicable statutes and long-established prior practice's as permitting the imposition of concurrent sentences such as the one at bar. It therefore concludes that the defendant’s sentence is proper.
The salutary spirit of ‘ ‘ understanding ’ ’ which permeated this defendant’s plea taking and sentence makes it most regrettable that a completely unanticipated change in correctional administrative policy will result in hardship to him.
In view of the foregoing, the defendant’s motion is in all respects denied.